## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| **JAMIE MILLS,** * | |
| * | |
| **Plaintiff,** * | |
| * | |
| **vs.** * | **Case No. 2:24-cv-00253-ECM** |
| * | |
| **JOHN HAMM, Commissioner,** * | |
| **Alabama Department of** * | |
| **Corrections,** *et al.*, * | |
| * | |
| * | |
| * | |
| **Defendants.** * | |

## MOTION FOR PRELIMINARY INJUNCTION
## AND SUPPORTING MEMORANDUM

Jamie Mills, pursuant to Rule 65 of the Federal Rules of Civil Procedure,

moves the Court for a Preliminary Injunction enjoining Defendants from:

- placing Mr. Mills on the execution-gurney while litigation in this case

  or in <u>Mills v. Hamm</u>, Case No. 6:17-cv-00789-LSC (N.D. Ala.) is

  pending;

- unnecessarily restraining Mr. Mills on the execution-gurney without

  legitimate reason and with wanton disregard for his suffering;

- excluding Mr. Mills' legal counsel from the execution chamber or otherwise limiting Mr. Mills' ability to communicate in person with his counsel while in the execution chamber;

- denying legal counsel's access to a phone line to communicate with his legal team and the courts.

In the alternative, Mr. Mills moves this Court for a stay of execution in the event the State refuses Mr. Mills these basic constitutional protections, injunctive relief is not granted or in the event this litigation remains pending at the time of Mr. Mills' scheduled execution.

Prior executions demonstrate that without this Court's intervention enjoining Defendants from unnecessarily placing Mr. Mills on the execution-gurney without regard for the unnecessary suffering this creates, Mr. Mills is at imminent risk of being subject to an unnecessarily prolonged and torturous execution. Without ensuring access to counsel in the execution chamber or to the courts, Mr. Mills will have no way to challenge this cruel and unnecessary treatment.

Prior executions also demonstrate that without this Court's intervention enjoining Defendants from excluding Mr. Mills' attorneys from the execution chamber, the State will prevent him from learning about the status of his pending litigation and restrict Mr. Mills' access to his attorney and the courts, leaving him no route for obtaining review of violations of his fundamental rights during this

critical period or to obtain timely and accurate information regarding his litigation. Mr. Mills has pending litigation before the United States District Court for the Northern District of Alabama raising colorable <u>Brady</u>, <u>Napue</u>, and <u>Giglio</u> claims and will very likely require access to counsel and to the courts regarding this litigation on the day of Mr. Mills' execution. <u>See</u> Rule 60 Motion, <u>Mills v. Hamm</u>, Case No. 6:17-cv-789-LSC, Doc. 42 (N.D. Ala. Apr. 5, 2024).

Further, prior executions demonstrate that State officials have consistently and repeatedly misstated and misrepresented what has happened to condemned prisoners during this process which has made discovery of critical facts concerning the constitutionality of the execution process or interventions to address cruel and unusual punishment impossible and will likely misrepresent the facts surrounding Mr. Mills' execution to the public.

Mr. Mills' claims do not involve a challenge to the State's method of execution, but instead involve enforcing basic Eighth Amendment and procedural Due Process rights to ensure Mr. Mills is not held for a prolonged period of time on the execution-gurney, to ensure the State is complying with court-ordered-stays, and to ensure Mr. Mills receives updates about ongoing litigation.

Finally, it is in the public interest to have an accurate and reliable record of the execution. Without the presence of counsel, the State has unreviewable

authority to engage in conduct related to the execution process and to make legal and factual determinations implicating fundamental rights.

## BACKGROUND

Mr. Mills was convicted of capital murder and sentenced to death in the Marion County Circuit Court in 2007. In a motion for a new trial, on direct appeal, and throughout state postconviction and federal habeas corpus proceedings, Mr. Mills asked prosecutors whether the District Attorney and the State's star witness truthfully represented to the jury, defense counsel, and the trial court that there was no plea offer in exchange for the witness's testimony, and at each stage the State has asserted that there was no deal and that JoAnn and the District Attorney testified truthfully. In reliance on the State's affirmative and repeated misrepresentations, Mr. Mills was denied habeas relief by the Northern District in November 2020, Mills v. Dunn, No. 6:17-CV-00789-LSC, 2020 WL 7038594, at *60, 78-79 (N.D. Ala. Nov. 30, 2020), and was denied a certificate of appealability on August 12, 2021. Mills v. Comm'r, Ala. Dep't of Corr., No. 21-11534, 2021 WL 5107477 (11th Cir. Aug. 12, 2021). The United States Supreme Court denied certiorari on April 18, 2022. Mills v. Hamm, 142 S. Ct. 1680 (2022).

In July, 2022, Defendants subjected Joe James to a protracted and torturous execution in which he was restrained on the execution-gurney for three hours and subjected to multiple punctures and incisions. See DE 1, Compl. ¶¶ 68-72. When

the curtains opened, he appeared to multiple credible witnesses to be sedated and unconscious, which Defendants initially denied and then "[could] not confirm." Id. at ¶ 111. In September and November of that same year, Defendants attempted to execute Alan Miller and Kenneth Smith. During these two botched executions, both Mr. Miller and Mr. Smith were restrained on the execution-gurney for prolonged periods and in vertical or reverse crucifixion positions, and in Mr. Smith's case, for two hours while a court-ordered stay was in place. Id. at ¶¶ 28-67.

Following these three botched executions and pursuant to a request from Defendant Governor Ivey, the Alabama Supreme Court amended Rule 8 of the Alabama Rules of Appellate Procedure to cede authority to set execution dates to the Governor and to *expand* the period the State has to subject condemned prisoners to the execution process. See Ala. R. App. P. 8(d)(1) (2023); see also Letter from Governor Ivey to the Alabama Supreme Court (Dec. 12, 2022).

Following the Alabama Supreme Court's rule change, these issues have persisted in the most recent executions, including prolonged and unnecessary periods of time on the execution-gurney and denial of access to counsel and to the courts while litigation remained ongoing. Id. at ¶¶ 73-81. Against this backdrop, the State filed a motion, on January 29, 2024, requesting the Alabama Supreme Court to authorize Mr. Mills' execution.

In February 2024, new evidence came to light that establishes that the

District Attorney falsely told the trial court, defense counsel, and the jury, that its star witness was not testifying in exchange for personal gain. On March 4, 2024, Mr. Mills filed a Second Petition for Rule 32 Relief in the Marion County Circuit Court, alleging that newly discovered evidence establishes that the District Attorney engaged in serious misconduct when he affirmatively stated to the trial court, the jury, and Mr. Mills that there was no deal with the State's central witness, whose testimony was crucial for the State.

On March 7, 2024, Mr. Mills also filed a Response to the State's January 29, 2024, motion to authorize Mr. Mills' execution, requesting that the Alabama Supreme Court deny the motion, or wait to authorize Mr. Mills' execution, until his critical claims of newly discovered evidence could be addressed.

On March 20, 2024, the Alabama Supreme Court rejected Mr. Mills' request and authorized the Governor to schedule an execution date. On March 27, 2024, Governor Ivey authorized Defendant Hamm to carry out Mr. Mills' execution to occur beginning at 12:00 a.m. on Thursday, May 30, 2024, and expiring at 6:00 a.m. on Friday, May 31, 2024. See Letter from Governor Ivey to Commissioner Hamm (Mar. 27, 2024).

On April 5, 2024, Mr. Mills filed a Rule 60 motion with the Northern District Court seeking to obtain relief from the court's prior dismissal of his federal habeas petition, because that dismissal was premised on the State's affirmative

misrepresentations that no plea deal existed with the State's critical witness at trial, JoAnn Mills. This motion has been fully briefed and litigation remains pending before the Northern District.

On April 16, 2024, the Marion County Circuit Court dismissed Mr. Mills' Second Rule 32 Petition.

On April 26, 2024, Mr. Mills filed the Section 1983 Complaint in this case.

**STANDARD OF REVIEW**

Preliminary injunctive relief is warranted where a party demonstrates: (1) a substantial likelihood of success on the merits; (2) the party will suffer irreparable injury unless the injunction issues; (3) the threatened injury outweighs the harm the injunction would cause the other litigant; and (4) if issued, the injunction would not be adverse to the public interest. Chavez v. Fla. SP Warden, 742 F.3d 1267, 1271 (11th Cir. 2014). The Eleventh Circuit has held that where the State is the opposing party, the third and fourth elements are the same. Swain v. Junior, 958 F.3d 1081, 1091 (11th Cir. 2020) (citing Nken v. Holder, 556 U.S. 418, 435 (2009)).

While such relief is not available as a matter of right, the Supreme Court has granted a preliminary injunction where, as here, the totality of equities favor doing so. See, e.g., Bucklew v. Precythe, 587 U.S. 119, 122 (2019) (noting the condemned prisoner "received a stay of execution" to challenge Missouri's execution protocol as unconstitutional as applied to him); Bucklew v. Lombardi,

572 U.S. 1131 (2014) (granting stay). Mr. Mills need only show that one of his claims is likely to succeed for the Court to grant his motion. See Alabama v. U.S. Army Corps of Eng'rs, 424 F.3d 1117, 1134 (11th Cir. 2005).

A stay should be granted when necessary to "give non-frivolous claims on constitutional error the careful attention that they deserve" and when a court cannot "resolve the merits [of a claim] before the scheduled date of execution to permit due consideration of the merits." See Barefoot v. Estelle, 463 U.S. 880, 888-89 (1983), superseded on other grounds by  28 U.S.C. § 2253(c) (1996).

**ARGUMENT**

**I.      MR. MILLS HAS A SUBSTANTIAL LIKELIHOOD OF SUCCESS.**

Mr. Mills alleges in Counts I-IV of the Complaint that placing and holding him on the execution-gurney for an extended period of time without any legitimate justification and without access to counsel is  unnecessarily cruel and unusual in violation of the Eighth and Fourteenth Amendments (Count I), and violates his rights to Due Process under the Fifth and Fourteenth Amendments (Count II), his rights to Access to the Courts in violation of the First, Sixth, Eighth, and Fourteenth Amendments (Count III), and his Sixth Amendment right to counsel (Count IV).  Mr. Mills is likely to succeed on each of these counts:

## A.     Count I (Cruel and Unusual Punishment)

Restraining Mr. Mills on an execution-gurney without legitimate reason and with wanton disregard for the pain and suffering this causes constitutes cruel and unusual punishment in violation of the Eighth Amendment. Hope v. Pelzer, 536 U.S. 730, 737 (2002) (quoting Rhodes v. Chapman, 452 U.S. 337, 346 (1981)); see also Id. at 741 ("The use of the hitching post" for hours on end "unnecessar[ily] and wanton[ly] inflicted pain, . . . and thus was a clear violation of the Eighth Amendment.") (internal citations and quotations omitted); Gates v. Collier, 501 F.2d 1291, 1306 (5th Cir. 1974) (finding that "handcuffing inmates to the fence and to cells for long periods of time . . . forcing inmates to stand, sit or lie on crates, stumps, or otherwise maintain awkward positions for prolonged periods" violates the Eighth Amendment); see also Nelson v. Campbell, 541 U.S. 637, 645 (2004) (refusing to "treat petitioner's [Eighth Amendment] claim differently solely because he has been condemned to die"); Helling v. McKinney, 509 U.S. 25, 33–34 (1993) (recognizing that "the Eighth Amendment protects against future harm to inmates" and finding imminent "unnecessary and wanton infliction of pain and suffering" to be actionable under the Eighth Amendment).

In the last two years, Alabama correctional officials have been subjecting condemned people to a prolonged, unnecessary execution process, bringing the condemned prisoner to the execution chamber and strapping him to the

execution-gurney for hours.[1] The State has begun the execution process, cruelly holding prisoners in distressed positions, while stay litigation was pending and even while court-ordered stays of execution were in place. During this process, which can last hours, the State prohibits the condemned inmate from having any access to counsel or the courts and withholds from the condemned any information about, and any means of learning about, the status of their appeals. All of this is conducted in secret. From the moment the condemned leaves the visitation room at 4:15 p.m. until the execution chamber curtain is opened to the public, there are no witnesses present other than Defendants and their agents.

The torturous and unconstitutional conduct that Mr. Mills now seeks this Court's protection from is demonstrated in the recent executions, and failed executions, of Kenneth Smith, Alan Miller, Joe James, and James Barber.

Kenneth Smith: During the State's failed execution attempt of Kenneth Smith on November 17, 2022, Mr. Smith was restrained on the execution-gurney for over three hours. See DE 1, Comp. ¶¶ 28-40. The State placed Mr. Smith on a gurney while stay litigation was ongoing, failed to notify Mr. Smith that he had received a stay from the Eleventh Circuit, and further failed to remove him from the gurney for **over two hours** after the Eleventh Circuit issued the stay. Id.

---

[1] Executions, whether by means of nitrogen hypoxia, lethal injection, or electrocution, commence once the condemned prisoner is brought to the execution chamber and placed on the gurney. Ala. Dep't. of Corr. Execution Procedures, at 15-19 (Aug. 2023).

Mr. Smith's attorney was excluded from the execution chamber leaving Mr. Smith alone in the chamber with representatives for the State. Id. At least one of the representatives appeared to be an attorney. Id. Mr. Smith repeatedly asked the State's representatives who were present in the chamber to contact his counsel or to call the district court and even provided his district court case number, but the State's representatives did not respond. Id. at ¶¶ 41, 47-49.

During the State's second execution of Kenneth Smith on January 25, 2024, he was again subjected to a prolonged period of unnecessary restraint on the execution-gurney. After Mr. Smith was separated from counsel just after 4:15 p.m., and taken to the execution chamber and restrained on the execution-gurney at approximately 6:00 p.m., Mr. Smith was not apprised of the U.S. Supreme Court's decision to vacate the stay of execution. Id. at  ¶¶ 77-81. He remained restrained on the execution-gurney without access to counsel or the courts or witnesses other than the State until the curtains opened at 7:53 p.m. Id.

Alan Miller: During the State's September 22, 2022, failed execution of Alan Miller, Mr. Miller was held on the execution-gurney in the execution chamber for over an hour and a half before his execution was called off. Id. at ¶¶ 53-67. Other than representatives for the State, one of whom, upon information and belief, was an attorney representing the Defendants, Mr. Miller was alone and without counsel for the entirety of this critical period. Id. At one point during the process,

after Mr. Miller had been on the gurney for over an hour, the IV team left the room and an officer raised the gurney from a horizontal to vertical position, a torturous position that left Mr. Miller hanging from the straps around his arms, feet, and chest for approximately twenty minutes. Id. at ¶¶ 58-59. He pleaded with officers that the position he was hanging in was "giving [him] hell," his elbows, arms and back were in pain and, worried he would be unable to give his last statement, Mr. Miller asked an officer present to pass on his final words to some of his friends on death row. Id. at ¶¶ 62-63. The officer did not respond. Id. No reason was revealed for the State's actions in leaving Mr. Miller hanging from the gurney for at least 20 minutes. Miller v. Hamm, 640 F. Supp. 3d 1220, 1242 (M.D. Ala. 2022).

Joe James: In Joe James's July 28, 2022 execution, Mr. James was restrained on the execution-gurney for over three hours before the curtains were opened. See DE 1, Compl. at ¶¶ 68-72.

James Barber: During James Barber's July 21, 2023, execution, Mr. Barber was restrained on the execution-gurney and without access to counsel for ninety minutes before the curtains to the witness room were opened. Id. at ¶¶ 73-76. According to Defendant Hamm, it took staff "three sticks in six minutes" to establish IV access, id., making the prolonged period Mr. Barber spent on the execution-gurney, prior to the opening of the curtains to the public, unnecessary. Mr. Barber was declared dead at 1:56 a.m. Id.

Restraining a condemned prisoner to the execution-gurney unnecessarily and without legitimate reason, and in wanton disregard for the suffering this causes, is cruel and torturous.

Mr. Mills is likely to succeed in proving that use of the execution-gurney "under these circumstances violate[s] the 'basic concept underlying the Eighth Amendment[, which] is nothing less than the dignity of man.' . . . This punitive treatment amounts to gratuitous infliction of 'wanton and unnecessary' pain that [U.S. Supreme Court] precedent clearly prohibits." Hope, 536 U.S. at 738 (quoting Trop v. Dulles, 356 U.S. 86, 100 (1958)); see also Estelle v. Gamble, 429 U.S. 97, 102 (1976) ("The primary concern of the drafters was to proscribe 'torture(s)' and other 'barbar(ous)' methods of punishment.") (citations omitted).

### B.     COUNT II (Due Process)

State executions must comply with the Due Process Clause of the Fourteenth Amendment which expressly provides that no State has the power to "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV; U.S. Const Amend. V; see also Gardner v. Fla., 430 U.S. 349, 358 (1977) (holding that "the sentencing process . . . must satisfy the requirements of the Due Process Clause"). The Due Process Clause requires at a minimum that the State allow Mr. Mills to be accompanied by his counsel throughout the execution process.

While the Supreme Court has not addressed the minimum due process requirements that govern an execution, the Court has held that access to counsel is minimally required at proceedings with much less at stake. See Gagnon v. Scarpelli, 411 U.S. 778, 788, 791 (1973) (finding counsel to be necessary in revocation proceedings where rights and "version of a disputed issue can fairly be represented only by a trained advocate"); Morrissey v. Brewer, 408 U.S. 471, 482-83 (1972) (holding that revocation proceedings must comply with Due Process given liberty interest at stake). The interest in life that is at stake in this case warrants even greater protection. "In capital proceedings generally, [the Supreme] Court has demanded that factfinding procedures aspire to a heightened standard of reliability . . . This especial concern is a natural consequence of the knowledge that execution is the most irremediable and unfathomable of penalties; that death is different." Ford v. Wainwright, 477 U.S. 399, 412 (1986); see also id. at 414 ("consistent with the heightened concern for fairness and accuracy that has characterized our review of the process requisite to the taking of a human life, we believe that any procedure that precludes the prisoner or his counsel from presenting material relevant to his sanity or bars consideration of that material by the factfinder is necessarily inadequate"); Morrissey, 408 U.S. at 482 ("liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process").

14

The State has no interest in depriving Mr. Mills of his life without some procedural guarantees. Morrissey, 408 U.S. at 483 ("the State has no interest in revoking parole without some informal procedural guarantees"). Allowing counsel to be part of these proceedings will not overly burden the State, but will help ensure Mr. Mills' Eighth Amendment protections are guaranteed, that he is apprised of ongoing litigation, and that the factual record is clarified and subject to checks on the State's misrepresentations throughout the ultimate deprivation of liberty—an execution. Gardner, 430 U.S. at 356 (where sentencing process not undertaken with transparency or access to counsel, there exists "no [] opportunity for petitioner's counsel to challenge the accuracy or materiality of [] information" relied upon by decision makers).

As demonstrated by Alan Miller and Kenneth Smiths' botched executions in September and November 2022, there is a very real risk the State will still proceed with Mr. Mills' execution, even in the event of a court-ordered stay or ongoing litigation, and counsel is necessary to protect his rights and enforce a court-ordered stay. Without counsel at this stage, any violation of Mr. Mills' rights would be unreviewable. Mr. Mills likewise requires counsel to ensure he is timely and accurately informed of the status and substance of ongoing litigation, such as his Rule 60 motion, and to ensure he is not subject to unnecessary and cruel restraint on the execution-gurney.

Kenneth Smith and Alan Miller's 2022 botched executions also demonstrate that the State does not and will not honor the condemned individuals' attempts to advocate for themselves. See, e.g., Second Amended Complaint, ¶¶ 183-86, Smith v. Hamm, Case No. 2:22-cv-00497 (M.D. Ala. Dec. 6, 2022). This weighs heavily in favor of the need for counsel for Mr. Mills during this process. Gagnon, 411 U.S. at 786-87 ("[T]he effectiveness of the rights guaranteed . . . may in some circumstances depend on the skills which the [condemned] is unlikely to possess.").

Mr. Mills is likely to succeed in proving that the minimum guarantees of Due Process require presence of counsel at his execution given the State's demonstrated track record in misrepresenting the factual reality and process of these executions. See, e.g., DE 1, Compl. at ¶¶ 101-12 (Defendants asserted Mr. Smith's January 2024 nitrogen execution, which was supposed to render Mr. Smith unconscious in seconds, was "textbook" and "expected," when in fact the victim's family present at the execution reported the process was prolonged and disturbing, "We were told by some people that worked [in the prison system] that he'd take two or three breaths and he'd be out and gone. That ain't what happened . . . With all that struggling and jerking and trying to get off that table, more or less, it's just something I don't ever want to see again.").

16

Where the Constitution provides "procedural guarantees" to individuals facing parole revocation, <u>Morrissey</u>, 408 U.S. at 483, and recognizes "the heightened concern for fairness and accuracy that has characterized [the Supreme Court's] review of the process requisite to the taking of a human life," <u>Ford</u>, 477 U.S. at 414, Mr. Mills is entitled to these minimal Due Process guarantees in the process surrounding the taking of his life.

### C.    COUNT III (Access to Courts)

Mr. Mills is likely to prevail on his claim that Defendants' exclusion of counsel for Mr. Mills from the execution chamber violates Mr. Mills' fundamental constitutional right to meaningful access to the courts in violation of his rights under the First, Sixth, and Fourteenth Amendments to the United States Constitution. <u>Bounds v. Smith</u>, 430 U.S. 817, 821 (1977); <u>see also</u> <u>Lewis v. Casey</u>, 518 U.S. 343, 351 (1996).

Without the presence of counsel in the execution chamber, Mr. Mills will be unable to effectuate his right of access to the courts and to enforce his Eighth Amendment rights as demonstrated by the botched November 17, 2022, execution of Kenneth Smith. Before the November 2022 execution date, the district court cited and adopted Commissioner Hamm's stipulation that ADOC would not employ a cutdown procedure or intramuscular sedation during Mr. Smith's execution and warned that "[s]anctions will be swift and serious if counsel and the

Commissioner do not honor or abide by their representations and stipulations." Smith v. Hamm, No. 2:22-CV-497-RAH, 2022 WL 10198154, at *5 (M.D. Ala. Oct. 16, 2022). Mr. Smith attempted to monitor the State's compliance and when he believed the State was attempting to sedate him and render him unconscious before administering the lethal injection drugs, he asked the State's representatives "if they had any authority to call the Court to report that his constitutional rights were being violated; they did not respond." Second Amended Complaint, ¶¶ 183-84 Smith v. Hamm, Case No. 2:22-cv-00497 (M.D. Ala. Dec. 6, 2022). He asked to speak to his lawyers or the court and provided his district court case number. Id. at ¶ 186. He repeatedly asked for his counsel and asked the representatives for the State who were present in the chamber to contact the district court. Id. at ¶¶ 201-02. The representatives refused and ignored his repeated pleas. Id. at ¶¶ 201-02.

The 2023 change to Rule 8(d) of the Alabama Rules of Appellate Procedure increases the amount of time that the State is permitted to subject a condemned person to the execution-gurney from 12 hours to 24 hours, thereby effectively doubling the time that the State has to subject condemned prisoners to unnecessary cruelty and torture by keeping them in execution positions for potentially hours. Pursuant to this order, Mr. Mills will definitively have no access to the courts, or to his counsel, for up to 12 hours on the night of his execution. Where counsel loses

18

access to the prisoner up to over 12 hours before the execution, as counsel will in Mr. Mills' case, "attorneys are not there to ensure that the protocol is carried out as directed . . . or that the inmate did not suffer pain and suffering while conscious." Hoffman v. Jindal, No. CIV.A. 12-796-JJB, 2014 WL 130981, at *7 (M.D. La. Jan. 10, 2014) (finding viable access to courts claim where policy prohibits attorneys from being with the prisoner in hours before execution or to witness the execution as an attorney).

As demonstrated by the State's refusal to contact counsel or the court when requested by Mr. Smith, prisoners "only have this fundamental access to the courts if they have access to their counsel because it is not Plaintiffs but their counsel who would contact a court if needed during the events immediately preceding and constituting the actual execution." Cooey v. Strickland, No. 2:04-CV-1156, 2011 WL 320166, at *9 (S.D. Ohio Jan. 28, 2011); see also id. at *11 ("Passive observation without necessary communication undercuts meaningful access to the courts.").

The total prohibition against counsel for the accused during the execution process, or a means to petition the court, is an "exaggerated response" to any security concerns the State may have. Turner v. Safley, 482 U.S. 78, 98 (1987) ("exaggerated response" demonstrated by the availability of alternatives).

Other jurisdictions have maintained security and decorum while allowing counsel to be present throughout the execution process and with access to a phone to petition the court to protect Eighth Amendment and Due Process rights. See, e.g., Coe v. Bell, 89 F. Supp. 2d 962, 967 (M.D. Tenn. 2000), vacated on other grounds, 230 F.3d 1357 (6th Cir. 2000) (finding plaintiff has the right under the First, Eighth and Fourteenth Amendments to have access to his counsel during the last hour before the execution and to have counsel witness the execution with access to a telephone); see also Zagorski v. Haslam, No. 3:18-CV-01205, 2018 WL 5454148, at *4 (M.D. Tenn. Oct. 29, 2018), aff'd, 741 F. App'x 320 (6th Cir. 2018) (enjoining the State "from proceeding with the plaintiff's execution unless his attorney-witness is provided with immediate access to a telephone during the time preceding and during the execution" to ensure right of access to the courts); Cooey, 2011 WL 320166, at *7 (finding "there is unquestionably a right to access the courts involved in the context of executions that inherently injects the issue of access to counsel into this discussion" and that the ability to communicate with counsel throughout the execution is what "makes the presence of counsel of any potential value" and "renders meaningful the ability of counsel to access a court on an inmate's behalf").

In Coe, the Middle District of Tennessee held that "[t]he state certainly has no legitimate interest in depriving the Plaintiff of access to the courts to assert a

claim of cruel and unusual treatment" and that "**the public interest is best served by insuring that executions are carried out in a constitutional manner**." Coe, 89 F. Supp. 2d at 966 (emphasis added); see also id. ("given society's (and the state's) interest in assuring that capital punishment is carried out in a humane manner and the minimal inconvenience to the state, this court finds the plaintiff's position well taken"). The court reaffirmed this in 2018 in Zagorski, a decision that was affirmed by the Sixth Circuit. Zagorski, 2018 WL 5454148, at *4.

The presence of representatives for the State in the execution chamber with access to a phone in prior executions demonstrates the ready availability of that option for counsel of the condemned.

Further, given Mr. Mills' ongoing Rule 60 litigation, there is a strong likelihood that substantive litigation will remain ongoing at the time of his scheduled execution. Mr. Mills is entitled to access the courts through counsel while this litigation is pending. This access to courts claim does not involve stopping an execution mid-injection, but involves subjects entirely within an attorney and a court's wheelhouse.

Mr. Mills has demonstrated that, without intervention by this Court, he will be denied his fundamental right to access the courts and denied the ability to protect his Eighth Amendment and Due Process rights under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments.

### D.      COUNT IV (Sixth Amendment Right to Counsel)

The Sixth Amendment right to counsel is violated when the State engages in adversarial conduct, with no regard for the rights of the condemned and without the presence of an attorney. A defendant's right to counsel is a fundamental component of our criminal justice system. Without the aid of counsel, a defendant may be deprived of his constitutional rights because he does not know how to establish the violation. For that reason, the right to counsel has been extended by the Supreme Court to any "stage of a criminal proceeding where substantial rights of a criminal accused may be affected." Mempa v. Rhay, 389 U.S. 128, 134 (1967). In United States v. Ash, the Court recognized that the right to counsel encompassed a "test" which requires an "examination of the event [at issue] in order to determine whether the accused required aid in coping with legal problems or assistance in meeting his adversary." 413 U.S. 300, 313 (1973) (relying on the "history and expansion of the Sixth Amendment counsel guarantee").

An execution is one such proceeding. The execution is the only proceeding for the condemned to obtain review of the State's compliance with procedures and the Constitution as demonstrated by the first execution of Kenneth Smith. Without the presence of counsel, Mr. Smith had no means of monitoring or compelling the State's compliance with the District Court's order prohibiting the State from using intramuscular sedatives. The Court has recognized that the subjective ability of a

defendant to advocate for himself is a relevant factor in assessing the need for counsel:

> Although the accused was not confronted [in the lineup at issue in United States v. Wade, 388 U.S. 218 (1967)] with legal questions, the lineup offered opportunities for prosecuting authorities to take advantage of the accused. Counsel was seen by the Court as being more sensitive to, and aware of, suggestive influences than the accused himself, and as better able to reconstruct the events at trial.

Ash, 413 U.S. at 312-13.

In Ash, the court recognized that the Sixth Amendment right to counsel addresses two concerns: (1) "the recognition and awareness that an unaided layman had little skill in arguing the law or in coping with an intricate procedural system" and (2) "a desire to minimize imbalance in the adversary system that otherwise resulted with the creation of a professional prosecuting official." Id. at 307-09; see also Johnson v. Zerbst, 304 U.S. 458, 462-63 (1938) ("It embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel."). While in Ash the Court found that a photo array was not a critical stage because the "the opportunity to cure defects at trial causes the confrontation to cease to be 'critical,'" Ash, 413 U.S. at 316, here there is no opportunity to cure.

In Wade, the Court found that its Sixth Amendment jurisprudence easily allowed extension of counsel to an in-person lineup. The similarity to trial was apparent, and counsel was needed to render assistance in counterbalancing any "overreaching" by the prosecution. United States v. Wade, 388 U.S. 218, 235 (1967) (recognizing right to counsel in order to protect constitutional rights beyond just right against self-incrimination). The Court noted that the need for counsel's presence is linked, not just to protect against self-incrimination, but to protect other constitutional rights that may be encroached upon by the State: "[N]othing decided or said . . . links the right to counsel only to protection of Fifth Amendment rights." Id. at 223–24, 226 (internal citations omitted).

As demonstrated by the State's refusal to contact counsel or the court when requested by Mr. Smith, prisoners "only have this fundamental access to the courts if they have access to their counsel because it is not Plaintiffs but their counsel who would contact a court if needed during the events immediately preceding and constituting the actual execution." Cooey, 2011 WL 320166, at *9; see also id. at *11 ("Passive observation without necessary communication undercuts meaningful access to the courts.").

Mr. Mills requires the presence of counsel to effectuate his right of access to the courts, to enforce his Eighth Amendment rights, and to communicate with Mr. Mills about pending federal litigation, including his Rule 60 litigation in the

Northern District. Counsel is necessary to ensure these rights are protected and to petition the courts in the event the State proceeds as it has in the recent past. Without counsel present, Mr. Mills will be in the same position Mr. Smith was in, unable to access the courts should the State unnecessarily subject him to prolonged restraint on the execution-gurney or proceed with the execution while a stay has been ordered. Mr. Mills has established a reasonable likelihood that he will prevail on this claim.

## II.   Mr. Mills Will Suffer Irreparable Injury.

Without this Court's intervention, Mr. Mills is at imminent risk of being subject to an unnecessarily prolonged and torturous execution. This risk is demonstrated by the failed executions of Kenneth Smith and Alan Miller and the executions of Joe James, James Barber, and Kenneth Smith. In each of these cases the State left the condemned person in painful positions for prolonged periods with wanton disregard for the suffering this caused and no access to counsel or the courts. See DE 1, Compl. ¶¶ 26-81. The State has begun the execution process, cruelly holding prisoners in distressed positions, while stay litigation was pending and even while court-ordered stays of execution were in place. Id. During this process, which can last hours, the State withholds from the condemned any information about, and any means of learning about, the status of their appeals. Id.

If counsel is excluded from the execution, Mr. Mills is likely to suffer the same irreparable injury. "[B]eing strapped to the gurney for up to four hours and at one point being placed in a stress position for an extended period of time, goes 'so far beyond what [is] needed to carry out a death sentence that [it] could only be explained as reflecting the infliction of pain for pain's sake.'" Smith v. Hamm, No. 2:22-CV-497-RAH, 2023 WL 4353143, at *7 (M.D. Ala. July 5, 2023) (internal citation omitted). The use of the execution-gurney "under these circumstances violate[s] the 'basic concept underlying the Eighth Amendment[, which] is nothing less than the dignity of man.' . . . This punitive treatment amounts to gratuitous infliction of 'wanton and unnecessary' pain that [U.S. Supreme Court] precedent clearly prohibits." Hope, 536 U.S. at 738 (quoting Trop v. Dulles, 356 U.S. 86, 100 (1958)); see also Estelle v. Gamble, 429 U.S. 97, 102 (1976) ("[T]he primary concern of the drafters was to proscribe 'torture(s)' and other 'barbar(ous)' methods of punishment.") (internal citations omitted).

## III. THE BALANCE OF EQUITIES, AND THE PUBLIC INTEREST, FAVOR A PRELIMINARY INJUNCTION.

Mr. Mills filed this complaint more than thirty days before his scheduled execution and his requests are easily obtainable within that time period. He does not seek to delay his execution through "manipulation" but instead, requests that this Court order the State to allow the presence of counsel, for his counsel to be able to access the courts on his behalf, and that the State be enjoined from

restraining him to an execution-gurney for a prolonged and unnecessary period of time. Woods v. Comm'r, Alabama Dep't of Corr., 951 F.3d 1288, 1293 (11th Cir. 2020) (finding last-minute nature of motion for stay 10 days prior to execution to be unjustified).

The State has no interest in executing Mr. Mills without due process and procedural protections, or in violation of Eighth Amendment protections. See Ray v. Comm's, Ala. Dep't of Corr., 915 F.3d 689, 702 (11th Cir. 2019) ("[N]either Alabama nor the public has any interest in carrying out an execution in a manner that violates. . . the laws of the United States."); Arthur v. Myers, No. 2:11-CV-438-WKW, 2015 WL 668007, at *5 (M.D. Ala. Feb. 17, 2015) (State has an interest in "carrying out criminal judgements, particularly executions, in a constitutionally acceptable manner"). To allow Mr. Mills' execution to proceed without these protections undermines public confidence in the State's ability to humanely and constitutionally carry out state-ordered executions and undermines the integrity of the process. Ford v. Wainwright, 477 U.S. 399, 414 (1986) (recognizing the "heightened concern for fairness and accuracy" in the process of taking a human life).

Further, the facts giving rise to the claims raised in the Complaint came to light in the past year and a half and have been exacerbated by the increased time in which executions may be carried out, enacted by the Governor and the Alabama

Supreme Court. Mr. Mills is well within the two-year statute of limitations for raising these claims. The State has produced the constitutional deficiencies identified in Counts I-IV of Mr. Mills' Complaint, which were revealed through survivor stories. The State likewise can remedy these deficiencies with very little cost or burden, and with very little delay. Thirty days remain before his execution, which is ample time for the State to remedy these serious issues.

An injunction will also not be adverse to the public interest. The presence of counsel and Mr. Mills' underlying claims do not involve an overall challenge to the State's method of execution, but instead, involves enforcing basic Eighth Amendment and procedural Due Process rights over the period of 12 hours, to ensure Mr. Mills is not held for an unnecessary period of time on the execution-gurney, to ensure the State is complying with court-ordered-stays, and to ensure Mr. Mills receives updates about ongoing litigation. These are subjects entirely within an attorney and a court's wheelhouse and can be accomplished while still allowing Mr. Mills' execution to eventually move forward. These are also constitutional guarantees that already exist, Mr. Mills is simply asking that the State be held to these basic requirements.

Mr. Mills also has ongoing litigation related to colorable <u>Brady</u>, <u>Napue</u>, and <u>Giglio</u> claims in federal and state court. Mr. Mills has continually sought process on these claims and given the litigation's current status, it is now apparent that this

litigation will likely still be pending up to and on the day of his scheduled execution.

Other jurisdictions have recognized the right to access the courts, and to counsel to effectuate this right, during an execution—Mr. Mills' claims are achievable while also ensuring security, safety, and decorum. See *supra* at p. 20-22.

Further, it is in the public interest to have an accurate and reliable record of the execution. The State can no longer be entrusted to protect Mr. Mills' constitutional rights without access to a mechanism to hold the State accountable, such as through access to this Court. State officials have misstated and misrepresented what has happened to condemned prisoners during this process which has made discovery of critical facts concerning the constitutionality of the execution process or interventions to address cruel and unusual punishment impossible, in violation of the condemned person's constitutional rights. See DE 1, Compl. ¶¶ 101-12. Without the presence of counsel, the State, whose lawyers are present throughout the time period leading up to the opening of the curtain, has unreviewable authority to engage in conduct related to the execution process and to make legal and factual determinations implicating fundamental rights.

**CONCLUSION**

For all of these reasons, this Court should grant Mr. Mills' motion for a preliminary injunction to enjoin Defendants from proceeding with the execution

while litigation is pending in state and federal courts; restraining Mr. Mills on the execution-gurney without legitimate reason and with wanton disregard for the unnecessary suffering this creates; excluding Mr. Mills' legal counsel from the execution chamber or otherwise limiting Mr. Mills' ability to communicate in person with his counsel while in the execution chamber; and denying legal counsel's access to a phone line to communicate with his legal team and the courts. In the alternative, this Court should grant a stay of execution in the event the State refuses Mr. Mills these basic constitutional protections, injunctive relief is not granted or in the event this litigation remains pending at the time of Mr. Mills' May 30, 2024 execution.

Respectfully Submitted,


/s/ Charlotte Morrison
CHARLOTTE R. MORRISON
ANGELA L. SETZER
RANDALL S. SUSSKIND
SOPHIA R. HENAGER
Equal Justice Initiative
122 Commerce Street
Montgomery, AL 36104
Phone:        (334) 269-1803
Fax:           (334) 269-1806
Email:        cmorrison@eji.org
                  asetzer@eji.org
                  rsusskind@eji.org
                  shenager@eji.org

May 3, 2024                    *Counsel for Mr. Mills*

## CERTIFICATE OF SERVICE

I certify that on May 3, 2024, I electronically filed the foregoing with the Clerk of the Court using the Pacer system, which will send notification to the following:

Lauren Simpson
Assistant Attorney General
Office of the Attorney General
Capital Litigation Division
501 Washington Avenue
Montgomery, AL 36130
Lauren.Simpson@alabamaag.gov

*Attorney for Defendants*

/s/ Charlotte Morrison
Charlotte R. Morrison