IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JAMIE MILLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACT. NO. 2:24-cv-253-ECM |
| | ) | [WO] |
| JOHN HAMM, Commissioner, | ) | |
| Alabama Department of Corrections, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

**I.  INTRODUCTION**

The State of Alabama is scheduled to execute Jamie Mills by lethal injection
between 12:00 a.m. on May 30, 2024, and 6:00 a.m. on May 31, 2024, almost seventeen
years after Mills was sentenced to death for the capital murders of Floyd and Vera Hill.
Fewer than five weeks before his execution date, Mills filed this 42 U.S.C. § 1983 action
against John Hamm ("Commissioner Hamm"), Commissioner of the Alabama Department
of Corrections ("ADOC"); Terry Raybon ("Warden Raybon"), Warden of Holman
Correctional Facility ("Holman"), where the execution is set to occur; Kay Ivey ("Governor
Ivey" or "Governor"), Governor of Alabama; and Steve Marshall ("Attorney General
Marshall" or "Attorney General"), the Alabama Attorney General (collectively,
"Defendants"), in their official capacities.  Mills claims that his impending execution will
violate his rights under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments to the
United States Constitution based on allegations that during executions, the Defendants

unnecessarily restrain inmates on the execution gurney for prolonged periods and deprive inmates of their rights to counsel and access to the courts.  Mills seeks declaratory and injunctive relief.

Fewer than four weeks before his execution date, Mills moved this Court for a preliminary injunction, or in the alternative a stay of execution, in which he seeks to enjoin the Defendants from (1) placing him on the execution gurney while his federal court litigation is pending; (2) unnecessarily restraining him on the execution gurney "without legitimate reason and with wanton disregard for his suffering"; (3) excluding his counsel from the execution chamber or otherwise limiting his ability to communicate in person with his counsel while in the execution chamber; and (4) denying his counsel access to a phone line. (Doc. 7 at 1–2).[1]  In the alternative, Mills asks the Court to issue a stay of execution "in the event the State refuses Mr. Mills these basic constitutional protections, injunctive relief is not granted or in the event this litigation remains pending at the time of Mr. Mills' scheduled execution." (*Id.* at 2).  Mills also moved the Court for leave to file discovery and for expedited discovery, in which he requests permission to serve the Defendants with sixteen requests for production of documents and nine interrogatories and for the Court to order the Defendants to respond within two weeks of the motion being filed—a date which has now passed. (Doc. 8).  The Defendants oppose both motions.

The Court held an evidentiary hearing and oral argument on the motions on May 14, 2024.  Upon careful consideration of the parties' arguments, evidence presented,

---

[1] References to page numbers are to those generated by the Court's CM/ECF electronic filing system.

relevant caselaw, and for the reasons below, the Court concludes that Mills' motion for a preliminary injunction (doc. 7) and his motion for expedited discovery (doc. 8) are due to be denied.

## II.  JURISDICTION AND VENUE

The Court has original subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.  Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III.  PROCEDURAL HISTORY AND BACKGROUND[2]

On the rainy afternoon of June 24, 2004, Jamie and JoAnn Mills drove to the home of Floyd and Vera Hill, a well-regarded elderly couple in the Marion County community of Guin, Alabama. *Mills v. Dunn*, 2020 WL 7038594, at *1 (N.D. Ala. Nov. 30, 2020) (quoting *Mills v. State*, 62 So. 3d 553, 557–61 (Ala. Crim. App. 2008)).  There, Jamie Mills wielded a machete, tire tool, and ball-peen hammer to bludgeon and rob the Hills. *Id.* at *1, *4.  Floyd Hill died that day; however, it was not until September 12, 2004, that Vera Hill died in hospice as the result of complications stemming from the head trauma she sustained during the June 2004 attack. *Id.* at *2.

---

[2] "When ruling on a preliminary injunction, 'all of the well-pleaded allegations [in a movant's] complaint . . . are taken as true.'" *Alabama v. U.S. Dep't of Com.*, 2021 WL 2668810, at *1 (M.D. Ala. June 29, 2021) (alteration in original) (quoting *Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976)).  Moreover, "[t]he [C]ourt may also consider supplemental evidence, even hearsay evidence, submitted by the parties." *Id.* (citing *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995)).  To that end, in addition to the factual allegations in Mills' complaint, the Court also considered the evidence presented at the May 14, 2024 evidentiary hearing, in the Defendants' responses to Mills' motions, and in Mills' reply. With that said, the facts recited here are not exhaustive of the facts presented in the parties' filings, evidentiary submissions, or the May 14, 2024 evidentiary hearing; rather, the Court presents the facts which it finds relevant in ruling on Mills' motions.

An investigation ensued and "[o]n December 14, 2004, Mills was indicted by a grand jury in Marion County, Alabama, on three counts of capital murder for the killings of Floyd Hill and Vera Hill.  Count I charged him with the robbery-murder of Floyd, *see* § 13A–5–40(a)(2), Ala. Code 1975; Count II charged him with the robbery-murder of Vera, *see* § 13A–5–40(a)(2), Ala. Code 1975; and Count III charged him with murder made capital because he killed Floyd and Vera by one act or pursuant to one scheme or course of conduct, *see* § 13A–5–40(a)(10), Ala. Code 1975." *Id.* at *4.  A jury convicted Mills of all three counts on August 23, 2007. *Id.* at *5.  Thereafter, on September 14, 2007, the trial court sentenced Mills to death, which was the jury's recommendation by a vote of 11–1. *Id.*

Mills appealed to the Alabama Court of Criminal Appeals ("ACCA"), where his case was remanded with instructions to amend the sentencing order on June 27, 2008. *Mills*, 62 So. 3d at 572.  Upon return from remand, the ACCA affirmed Mills' convictions and death sentence. *Id.* at 573–74.  Mills then sought review by the Alabama Supreme Court, which affirmed Mills' convictions and death sentence on September 4, 2010. *Ex parte Mills*, 62 So. 3d 574, 601 (Ala. 2010).  The United States Supreme Court denied Mills' petition for a writ of certiorari on June 29, 2012. *Mills v. Alabama*, No. 10-10180 (2012).

Mills also filed indirect appeals in state court.  On November 21, 2011, Mills timely filed a petition pursuant to Alabama Rule of Criminal Procedure 32, which was eventually denied by the Marion County Circuit Court. *Mills*, 2020 WL 7038594, at *7.  Both the ACCA and the Alabama Supreme Court affirmed the Circuit Court's denial of Mills' Rule

32 petition. *Mills v. State*, No. CR-13-0724 (Ala. Crim. App. Dec. 11, 2015); *Ex parte Mills*, No. 1150588 (Ala. May 25, 2016).

Then, having exhausted state remedies, Mills sought relief in federal court. To that end, Mills petitioned for habeas relief pursuant to 28 U.S.C. § 2254 in the United States District Court for the Northern District of Alabama. The district court denied Mills' § 2254 petition in a lengthy opinion on November 30, 2020. *See generally Mills*, 2020 WL 7038594. The Eleventh Circuit denied a certificate of appealability on August 12, 2021, *Mills v. Comm'r, Ala. Dep't of Corr.*, 2021 WL 5107477 (11th Cir. Aug. 12, 2021), and the United States Supreme Court denied certiorari on April 18, 2022, *Mills v. Hamm*, 142 S. Ct. 1680 (2022).

On January 29, 2024, with Mills' appeals exhausted, Attorney General Marshall filed a motion asking the Alabama Supreme Court to authorize Mills' execution by lethal injection. (Doc. 7 at 5). Then, on March 4, 2024, Mills filed a second petition for Rule 32 relief in the Marion County Circuit Court, citing allegedly new evidence of conduct by state prosecutors in his case. (*Id.* at 6). Shortly thereafter, Mills filed a response to Attorney General Marshall's motion in which Mills requested denial of the motion, or in the alternative, that the court wait to authorize his execution until after his new Rule 32 claims could be addressed. (*Id.*). Notwithstanding Mills' opposition, on March 20, 2024, the Alabama Supreme Court authorized Mills' execution by lethal injection, and on March 27, 2024, Governor Ivey set Mills' execution timeframe for 12:00 a.m. on Thursday, May 30, 2024, through 6:00 a.m. on Friday, May 31, 2024. (*Id.*; doc. 1 at 23, para. 87).

Following Governor Ivey setting Mills' execution timeframe, a flurry of legal filings blanketed the courts. On April 5, 2024, Mills filed a motion in the Northern District of Alabama, pursuant to Federal Rule of Civil Procedure 60, for the court to revisit its prior decision on his § 2254 habeas petition, citing allegedly new evidence of conduct by state prosecutors—the same claims raised in his renewed Rule 32 motion in state court.[3] (*See* doc. 42 in *Mills v. Hamm*, Case No. 6:17-cv-789-LSC (N.D. Ala. Apr. 5, 2024)). The Northern District of Alabama denied Mills' motion on May 17, 2024. (Doc. 48 in *Mills v. Hamm*, Case No. 6:17-cv-789-LSC (N.D. Ala.)).[4] In parallel to the Rule 60 motion in federal court, Mills litigated his renewed Rule 32 motion in Marion County Circuit Court, which that court denied on April 16, 2024. (*See* doc. 7 at 6–7).

Then, on April 26, 2024, ten days after the Rule 32 denial, Mills filed this action. (*See* doc. 1). And now, nearly a month and a half after Governor Ivey set his execution date, Mills asks this Court to enjoin the Defendants from: (1) "placing Mr. Mills on the execution-gurney while litigation in this case or in [*Mills v. Hamm*], Case No. 6:17-cv-00789-LSC (N.D. Ala.) is pending"; (2) "unnecessarily restraining Mr. Mills on the execution-gurney without legitimate reason and with wanton disregard for his suffering"; (3) "excluding Mr. Mills' legal counsel from the execution chamber or otherwise limiting Mr. Mills' ability to communicate in person with his counsel while in the execution chamber"; and (4) "denying legal counsel's access to a phone line to communicate with his

---

[3] The merits of such claims are not before this Court; thus, these claims will not be discussed in this Opinion.

[4] Mills also filed a motion for stay of execution in the Northern District, which that court also denied.

legal team and the courts." (Doc. 7 at 1–2).  In the alternative, Mills asks the Court to issue a stay of execution "in the event the State refuses Mr. Mills these basic constitutional protections, injunctive relief is not granted or in the event this litigation remains pending at the time of Mr. Mills' scheduled execution." (*Id.* at 2).  At the evidentiary hearing, Commissioner Hamm testified that Mills would not be moved to the execution chamber if a stay order or agreement to stay was in place, and that Mills would be removed from the execution chamber if such an order or agreement was issued after Mills moved to the chamber.  These assurances did not assuage Mills' concerns about his upcoming execution, and accordingly, he still seeks the injunctive relief requested in his motion.

Mills asserts that recent executions carried out by the State establish a pattern of "torturous and unconstitutional conduct." (*Id.* at 10).  Mills contends that this conduct subjects "condemned people to a prolonged, unnecessary execution process" wherein condemned prisoners are strapped "to the execution-gurney for hours" while the State "prohibits the condemned inmate from having any access to counsel or the courts and withholds from the condemned any information about, and any means of learning about, the status of their appeals." (*Id.* at 9–10).  Mills further contends that most of this process is conducted in "secret" due to the absence of any witnesses who could provide an "accurate and reliable record of the execution," since "State officials have misstated and misrepresented what has happened to condemned prisoners during this [execution] process." (*Id.* at 10, 29).  In support of these assertions, Mills offers allegations regarding the executions, or attempted executions, of Joe James, Kenneth Smith, Alan Miller, and James Barber. (Doc. 1 at 11–21, 29–32, paras. 28–52 (Kenneth Smith's 2022 attempted

execution); paras. 53–67 (Alan Miller's attempted execution); paras. 68–72, 110–11 (Joe James' execution); paras. 73–76 (James Barber's execution); paras. 77–81, 103–05 (Kenneth Smith's 2024 execution); *see also* doc. 7 at 10–13 (summarizing each execution or execution attempt)).  Accordingly, the Court will briefly describe each.[5]

### *Joe James*

The State executed Joe James by lethal injection on July 28, 2022. (Doc. 15-2).  Per ADOC's log of his execution day, James received a phone call from his attorney at 5:07 p.m. while in the holding cell awaiting execution. (*Id.* at 2).  Then, at 6:23 p.m., ADOC staff escorted James to the execution chamber. (*Id.*).  By 8:52 p.m., the IV team[6] successfully established the requisite lines, the witnesses were brought in at 8:56 p.m., and Warden Raybon read the death warrant at 9:03 p.m. (*Id.*).  Thus, according to ADOC records, James spent two hours and forty minutes on the gurney prior to his execution. (*See id.*).  Mills contends that this process took "over three hours," citing contemporaneous media reports. (Doc. 1 at 31, paras. 109–10 (citing an article from the *Montgomery Advertiser*)).  In addition, Mills alleges that "an independent autopsy found that [James] likely suffered a long death and that his body showed multiple puncture wounds, pools of deep bruising, and cuts indicative of a cut-down procedure,"[7] and further asserts that James

---

[5] In his complaint, Mills did not allege facts about the execution of Casey McWhorter, the most recent inmate to be executed by lethal injection in Alabama. (*See* doc. 15 at 28).  The Court, nonetheless, will discuss McWhorter's execution.

[6] The IV team comprises the execution team members who set the intravenous ("IV") lines.

[7] A cut-down procedure, which is not included in the State's lethal injection protocol, occurs when medical personnel cut through the skin of the condemned to expose direct access to a vein to set an IV line.

was unconscious when the curtains of the execution chamber opened. (*Id.* at 31–32, paras. 110–11).[8]

### *Alan Miller*

On September 22, 2022, two months after James' execution, the State attempted to execute Alan Miller by lethal injection. (Doc. 15-3).  As detailed in ADOC's log of Miller's attempted execution, Miller spoke to his attorney at 5:22 p.m., with additional calls initiated at 6:32 p.m. and 8:02 p.m. (*Id.* at 2).  Then, at 9:55 p.m., ADOC staff escorted Miller to the execution chamber. (*Id.*).  ADOC's log indicates that the IV lines were secured by 11:20 p.m. but were removed at 11:48 p.m., with Miller exiting the execution chamber minutes later because of insufficient time before the death warrant's midnight expiration. (*Id.*; doc. 1 at 17–18, paras. 64–66; doc. 15-8 at 4, para. 10).  Thus, ADOC records indicate that Miller spent one hour and fifty-five minutes on the execution gurney. (*See* doc. 15-3 at 2).

Mills contends that the State acted improperly during Miller's attempted execution. Mills alleges that the State, without explanation given, raised Miller into a "vertical position" on the execution gurney for twenty minutes after the IV team was called out of the execution chamber. (Doc. 1 at 16–17, paras. 57–60).  Miller allegedly expressed physical pain and confusion to state officials present, who offered no response to Miller's

---

[8] In 2023, James' estate ("Estate") filed a § 1983 lawsuit asserting claims that state officials, including the Defendants here, violated James' Eighth Amendment rights in carrying out his execution. (*See generally* doc. 1 in *Estate of Joe Nathan James v. Ivey et al.*, 2:23-cv-293-ECM (M.D. Ala. May 3, 2023)).  This Court dismissed the Estate's claims on qualified immunity grounds. (Doc. 43 in *Estate of Joe Nathan James v. Ivey et al.*, 2:23-cv-293-ECM (M.D. Ala. May 3, 2023)).  The Estate appealed, and the appeal is currently pending before the Eleventh Circuit. (*See* No. 24-11273-B).

pleas. (*Id.* at 17, paras. 59–60, 63).  The Defendants deny this version of events and offer the affidavit of Cynthia Stewart Riley ("Riley"), a Regional Director at ADOC and former warden of Holman—the position designated as Alabama's statutory executioner. (Doc. 15 at 51; *see* doc. 15-8 at 2–3, paras. 1–3); ALA. CODE § 15-18-82(c).  In her affidavit and at the evidentiary hearing, Riley testified that the execution gurney cannot tilt into a full vertical position—*i.e.*, 90 degrees—as Miller alleged. (Doc. 15-8 at 4, para. 8 (affidavit); doc. 25 at 89, lines 21–25 (evidentiary hearing)).  Riley also testified that the gurney is tilted at a lesser angle for the condemned to give their final words. (Doc. 25 at 93, lines 6–9).

### Kenneth Smith (2022)

Following the aborted execution of Alan Miller, the State attempted to execute Kenneth Smith by lethal injection two months later. (*See* doc. 15-4).  Per ADOC's execution log for November 17, 2022, Smith made several phone calls to family members from the holding cell for condemned inmates between 4:48 p.m. and 7:25 p.m. (*Id.* at 2).  Thirty-six minutes later, at 8:01 p.m., ADOC staff escorted Smith to the execution chamber. (*Id.*).  Between 8:25 p.m. and 10:18 p.m., the log repeatedly notes that Smith was strapped down to the gurney, save a single entry at 8:50 p.m., which recorded that an execution team member provided Smith a blanket. (*Id.*).  It is during this period in which Mills alleges that the execution team tilted Smith into a reverse crucifixion position for an unspecified length of time, and that Smith's requests to speak to his lawyers or the court were refused or ignored. (Doc. 1 at 14–15, paras. 41–43, 48–49).

At 10:20 p.m., the execution team successfully established an IV in Smith's left arm, but at 10:27 p.m., the log notes the team's failure to set an IV in Smith's right arm. (Doc. 15-4 at 3).  The next entry, at 11:15 p.m., records an attempt to establish an IV in Smith's neck area, which is known as a "central line procedure," and Smith jerking his head—presumably in response to the attempted placement of a central line. (*See id.*; doc. 15 at 52–53).  But, at 11:32 p.m., ADOC staff escorted Smith out of the chamber for a medical assessment, and state officials called off the execution because of an inability to establish the needed IV lines before the expiration of the death warrant. (Doc. 15-4 at 3; doc. 15 at 53; doc. 1 at 15, para. 50; doc. 15-8 at 4, para. 10).  In total, Smith spent three hours and thirty-one minutes on the execution gurney, according to ADOC records. (*See* doc. 15-4 at 2–3).

In addition to recounting Smith's subjective experience during this ordeal—as alleged in Smith's own lawsuit—Mills relays Smith's allegations that the State undertook these steps while a stay issued by the Eleventh Circuit was in effect. (*See* doc. 1 at 12, para. 31; *id.* at 11–16, paras. 28–52).  As described by Mills and confirmed by the Defendants, the Eleventh Circuit issued a stay at 7:59 p.m., which was just two minutes after ADOC's execution log details ADOC staff escorting Smith to the execution chamber. (Doc. 1 at 12, para. 31; doc. 15 at 52; *see* doc. 15-4 at 2).  The United States Supreme Court eventually vacated the Eleventh Circuit's stay at 10:20 p.m.—the exact time that ADOC records indicate successful placement of an IV line in Smith's left arm. (Doc. 1 at 13, para. 38; doc. 15-4 at 3).  In the approximately two hours between entry of the stay and its vacatur,

officials in the execution chamber did not communicate any information about the stay to Smith. (Doc. 1 at 12, paras. 33–34 (citing Smith's second amended complaint)).

### *The State's Review and Subsequent Changes*

In November 2022, after the events recited above, Governor Ivey called for a "top-to-bottom" review of ADOC's execution procedures. (Doc. 1 at 21, para. 83; doc. 15-8 at 4, para. 11).  As a result of this review, several changes were made.  First, on December 12, 2022, Governor Ivey asked the Alabama Supreme Court to amend the Alabama Rules of Appellate Procedure to expand the length of the execution process. (Doc. 1 at 22–23, para. 85).  The Alabama Supreme Court obliged, and in January 2023, the court amended Rule 8 of the Alabama Rules of Appellate Procedure to eliminate the twenty-four-hour period for an execution and to instead allow the Governor to set the timeframe. (*Id.* at 23, para. 86).  In practice, the execution timeframe expanded to thirty hours. (*See*, *e.g.*, doc. 11-1 at 2 in *Barber v. Ivey, et al.*, 2:23-cv-342-ECM (M.D. Ala. July 7, 2023); *see also* doc. 1 at 23, paras. 87–88; doc. 7 at 6).  Mills alleges that although the execution timeframe is thirty hours, "the effective scheduled time" of his execution "is the 12-hour period between May 30 at 6:00 p.m. and May 31 at 6:00 a.m." (Doc. 1 at 23, para. 88).  Second, ADOC retained a new IV team, who worked on Barber's and McWhorter's executions and are set to work on Mills' execution. (Doc. 15-8 at 4, para. 11).  Following these changes, Commissioner Hamm informed Governor Ivey on February 24, 2023 that ADOC's review was complete and that ADOC was "as prepared as possible to resume carrying out executions consistent with the mandates of the Constitution." (Doc. 1-5 at 2 in *Barber v. Ivey, et al.*, 2:23-cv-342-ECM (M.D. Ala. July 7, 2023)).

### James Barber

Pursuant to the revised rules, Governor Ivey set the timeframe for the execution of James Barber in a letter dated May 30, 2023. (Doc. 11-1 at 2 in *Barber v. Ivey, et al.*, 2:23-cv-342-ECM (M.D. Ala. July 7, 2023)).   His execution took place on July 21, 2023, by lethal injection. (Doc. 1 at 19–20, paras. 73, 76; doc. 15 at 53).   According to ADOC records, Barber arrived at the holding cell to await execution at 4:38 p.m. on July 20, 2023. (Doc. 15-5 at 2).   Thereafter, at 4:41 p.m., 5:10 p.m., 6:40 p.m., 7:10 p.m., 11:20 p.m., and 11:55 p.m., Barber initiated phone calls to his attorney. (*Id.*).   Then, at 12:14 a.m. on July 21, 2023, ADOC staff escorted Barber to the execution chamber. (*Id.*).   The requisite IV lines were installed by 12:30 a.m., but witnesses did not start arriving until 1:21 a.m.— delaying the reading of the death warrant until 1:31 a.m. (*Id.* at 2–3).   Therefore, according to ADOC records, Barber spent one hour and seventeen minutes on the execution gurney. (*See id.*).

After Barber's execution, ADOC undertook another reform.   Recognizing the impact that delays in witness transportation had on the timing of executions, ADOC altered its transportation protocols so that witnesses are moved into the designated witness rooms as soon as the inmate is prepared in the execution chamber. (Doc. 15-8 at 4–5, para. 12). As detailed below, this reform reduced the condemned inmate's time on the gurney. (*Id.*).

### Casey McWhorter

Casey McWhorter is the most recent person the State executed by lethal injection, though neither Mills' complaint nor his motion for preliminary injunction mentions McWhorter. (*Compare* doc. 15 at 50, *with* docs. 1 and 7).   The State executed McWhorter

on November 16, 2023. (Doc. 15-6).  Per ADOC's execution log, McWhorter arrived in the holding cell to await execution at 4:40 p.m. (*Id.* at 2).  There, McWhorter sat and spoke with his spiritual advisor until he was escorted to the execution chamber at 5:42 p.m. (*Id.* at 3).  At 6:02 p.m., the IV lines were set, and witnesses arrived between 6:24 p.m. and 6:29 p.m. (*Id.*).  Warden Raybon read the death warrant at 6:30 p.m. (*Id.*).  In total, McWhorter spent forty-eight minutes on the gurney. (*See id.* at 2–3).

### *Kenneth Smith (2024)*

A little over two months later, on January 25, 2024, the State executed Kenneth Smith by nitrogen hypoxia. (Doc. 1 at 20, para. 77; doc. 15 at 53–54).  ADOC's log of Smith's execution shows him entering the holding cell to await execution at 4:43 p.m. (Doc. 15-7 at 2).  There, Smith made a series of phone calls to his family and attorney over the course of a little over an hour. (*Id.* at 2–3).  Then, at 7:20 p.m., ADOC staff escorted Smith to the execution chamber, where his spiritual advisor prayed and anointed Smith with oil.[9] (*Id.* at 3).  At 7:37 p.m. the mask was placed on Smith, witnesses arrived twelve minutes later, and at 7:54 p.m., Warden Raybon read the death warrant. (*Id.*).  Smith spent thirty-four minutes on the gurney. (*See id.* at 2–3). [10]

---

[9] In his complaint, Mills alleges that Smith was not apprised of a decision by the United States Supreme Court "to vacate the stay of execution" for his 2024 execution. (Doc. 1 at 20, para. 79).  However, Mills' counsel acknowledged at the May 14, 2024 evidentiary hearing that this was a misstatement, as no stay was entered during litigation over Smith's 2024 nitrogen hypoxia execution.

[10] At the evidentiary hearing, Mills offered several exhibits pertaining to Smith's nitrogen hypoxia execution, including reports from Smith's experts regarding nitrogen gas executions and witness accounts of Smith's execution.  The Defendants objected on relevance and hearsay grounds, which the Court overruled.  Having reviewed the exhibits, the Court finds them minimally relevant to the resolution of the issues here because Smith was executed not by lethal injection but by nitrogen hypoxia.  In any event, the exhibits do not alter the Court's analysis or conclusions.

Now, the State is scheduled to execute Mills by lethal injection between 12:00 a.m. on May 30, 2024, and 6:00 a.m. on May 31, 2024, almost seventeen years after Mills was sentenced to death for the capital murders of Floyd and Vera Hill.

## IV.  LEGAL STANDARDS

### A.  Preliminary Injunction

To be entitled to the entry of a preliminary injunction or stay of execution, Mills must demonstrate: (1) a substantial likelihood of success on the merits; (2) a likelihood of suffering irreparable injury without the injunction; (3) that the threatened injury to him outweighs the harm the injunction would cause the other litigants; and (4) that the injunction would not be adverse to the public interest. *Woods v. Comm'r, Ala. Dep't of Corr.*, 951 F.3d 1288, 1292 (11th Cir. 2020).  Where, as here, "the [State] is the party opposing the preliminary injunction, its interest and harm merge with the public interest," and thus the third and fourth elements are the same. *Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  Such relief is "'not to be granted unless the movant clearly established the "burden of persuasion"' for each prong of the analysis." *Am.'s Health Ins. Plans v. Hudgens*, 742 F.3d 1319, 1329 (11th Cir. 2014) (citation omitted).  Mills, as the movant, must satisfy his burden on all four elements "by a clear showing." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (citation omitted).

## B. Expedited Discovery

Generally, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order." FED. R. CIV. P. 26(d)(1).  "[E]xpedited discovery should be granted only in exceptional instances." *Mullane v. Almon*, 339 F.R.D. 659, 663 (N.D. Fla. 2021) (citation omitted).[11]  Expedited discovery allows a party "to obtain specific, limited, and identifiable pieces of information, particularly when there is some risk of spoliation," "when the suit cannot reasonably proceed without the information," or "when some unusual circumstances or conditions exist that would likely prejudice the party if he were required to wait the normal time." *Id.* (citations omitted).

"Although the Eleventh Circuit Court of Appeals 'has not adopted a standard for allowing expedited discovery, . . . many district courts within the Eleventh Circuit have expressly used a general good cause standard when confronted with expedited discovery requests.'" *Brown v. Dunn*, 2021 WL 4523498, at *1 (M.D. Ala. Oct. 4, 2021) (quoting *Rivera v. Parker*, 2020 WL 8258735, at *3 (N.D. Ga. Aug. 28, 2020)).  "[T]he party requesting expedited discovery has the burden of showing the existence of good cause." *Id.* (quoting *In re Chiquita Brands Int'l, Inc.*, 2015 WL 12601043, at *3 (S.D. Fla. Apr. 7, 2015)).

"Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *TracFone*

---

[11] Here, and elsewhere in this Opinion, the Court cites to nonbinding authority.  While the Court recognizes that these cases are nonprecedential, the Court finds them persuasive.

*Wireless, Inc. v. SCS Supply Chain LLC*, 330 F.R.D. 613, 615 (S.D. Fla. 2019) (citation omitted).  In deciding whether a party has shown good cause, courts often consider the following factors: "(1) whether a motion for preliminary injunction is pending; (2) the breadth of the requested discovery; (3) the reason(s) for requesting expedited discovery; (4) the burden on the opponent to comply with the request for discovery; and (5) how far in advance of the typical discovery process the request is made." *Socal Dab Tools, LLC v. Venture Techs., LLC*, 2022 WL 19977793, at *1 (M.D. Ala. Apr. 25, 2022) (citation omitted).  Courts also consider whether a motion to dismiss is pending. *Mullane*, 339 F.R.D. at 663.

## V.  DISCUSSION

Mills brings four claims pursuant to § 1983.  In Count I, Mills claims that subjecting a condemned person to prolonged restraint on the execution gurney "without legitimate reason and without access to counsel causes 'unnecessary and wanton pain and suffering,' and constitutes cruel and unusual punishment in violation of the Eighth Amendment." (Doc. 1 at 33, para. 116).  In Count II, Mills asserts that the Defendants' exclusion of his counsel from the execution chamber violates his due process rights under the Fifth and Fourteenth Amendments.[12]  In Count III, Mills claims that the Defendants' exclusion of his counsel from the execution chamber violates his constitutional right to meaningful access to the courts under the First, Sixth, Eighth, and Fourteenth Amendments.  According to Mills, he requires his counsel's presence the entire time he is in the execution chamber

---

[12] At the evidentiary hearing, Mills' counsel acknowledged that the Fifth Amendment applies to the federal government, not the states, and thus is inapplicable here.

to "effectuate his right of access to the courts and to enforce his Eighth Amendment rights." (*Id.* at 38, para. 131).  In Count IV, Mills asserts that the Defendants' exclusion of his counsel from the execution chamber violates his right to counsel and to due process under the Sixth and Fourteenth Amendments.  Mills argues he is entitled to preliminary injunctive relief on all claims.

The Defendants filed a combined motion to dismiss and response to Mills' motion for preliminary injunction (doc. 15) and a response in opposition to Mills' motion for expedited discovery (doc. 14).  The Defendants argue that Mills is not entitled to a preliminary injunction or stay because (1) Mills lacks standing to sue Governor Ivey and Attorney General Marshall, and the claims against Governor Ivey are barred by sovereign immunity; (2) Counts II, III, and IV are barred by the statute of limitations—although at the evidentiary hearing, the Defendants seemingly abandoned their limitations argument as to Count III (doc. 25 at 75 lines 22–25; 76 lines 1–25); (3) Mills' claims all fail on the merits in any event; and (4) the equities weigh against the entry of a preliminary injunction. The Defendants also argue that Mills has not shown good cause for expedited discovery.

The Court concludes that Mills has standing to sue Governor Ivey and Attorney General Marshall and that Mills' claims against Governor Ivey are permitted under *Ex parte Young*.[13]  Nonetheless, the Court concludes that Mills has not established entitlement to a preliminary injunction or stay of execution for two independent reasons.  First, the balance of the equities militates strongly against granting injunctive relief because Mills

---

[13] 209 U.S. 123 (1908).

inexcusably delayed filing this action. Second, even if the equities were in his favor, he has failed to show a substantial likelihood of success on the merits—"the most important preliminary-injunction criterion." *See Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1127–28 (11th Cir. 2022); *see also Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1226 (11th Cir. 2005) (per curiam) ("Controlling precedent is clear that injunctive relief may not be granted unless the plaintiff establishes the substantial likelihood of success criterion."). The Court also concludes that Mills has not shown good cause for expedited discovery at this stage.

The Court's discussion will proceed in three parts. First, the Court will address the jurisdictional issues raised by the Defendants: standing and sovereign immunity. Second, the Court will address Mills' request for a preliminary injunction, beginning with the equities before turning to substantial likelihood of success on the merits. Third and finally, the Court will address Mills' request for expedited discovery.

## A. Jurisdictional Issues

The Defendants argue that Mills lacks Article III standing to bring his claims against Governor Ivey and Attorney General Marshall because Mills' alleged injuries are neither traceable to those defendants nor redressable by an order against them. The Defendants also argue that Eleventh Amendment sovereign immunity bars injunctive relief against Governor Ivey and that the *Ex parte Young* exception does not apply. The Court addresses each argument in turn.

### 1. Standing

To have Article III standing, a plaintiff must establish three elements: "(1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). In conducting the standing inquiry, the Court must "assume that on the merits [Mills] would be successful" on his claims. *See Culverhouse v. Paulson & Co. Inc.*, 813 F.3d 991, 994 (11th Cir. 2016).

At this stage, accepting the complaint's allegations as true, Mills has sufficiently shown that he has Article III standing to sue Governor Ivey and Attorney General Marshall. Beginning with injury in fact, Mills alleges that he faces an imminent future injury during his upcoming execution because he will be unnecessarily restrained on the execution gurney for hours, even when a stay is in place. These allegations are sufficient to establish an injury in fact, which the Defendants do not dispute. *See Smith v. Comm'r, Ala. Dep't of Corr.*, 2021 WL 4817748, at *3 (11th Cir. Oct. 15, 2021); *Moody v. Holman*, 887 F.3d 1281, 1286 (11th Cir. 2018). Turning to traceability, Mills contends that Attorney General Marshall's role in the execution process includes determining "whether a stay of execution has been entered or is expected to be entered, or whether the execution has been voluntarily delayed at the request of the court," as well as clearing executions to commence, as shown by Alabama's execution protocol and the Attorney General's own public statements. (Doc. 23 at 11; *see also* doc. 1 at 8–9, paras. 20–22). Mills also asserts that Governor Ivey's role includes scheduling execution timeframes and that she set the thirty-hour timeframe for his

execution. (Doc. 1 at 7–8, paras. 17–19).  Moreover, Mills contends that prolonged restraint on the execution gurney violates his constitutional rights, which, according to him, is at least partially caused or exacerbated by Governor Ivey's setting a thirty-hour timeframe for his execution. (*E.g.*, doc. 1 at 3, para. 2; *id.* at 7–8, para. 18).  Thus, at this stage, Mills' alleged injuries from prolonged restraint on the gurney are fairly traceable to Governor Ivey's conduct in setting the timeframe for his execution and to Attorney General Marshall's conduct in clearing executions to proceed where inmates have been restrained on the gurney for hours unnecessarily *See Smith*, 2021 WL 4817748, at *3; *Moody*, 887 F.3d at 1286–87.

Finally, regarding redressability, Mills' requested relief includes a permanent injunction enjoining the Defendants from subjecting him "to the illegal and unconstitutional practices described in [his] complaint" and "such other relief as may be just and equitable." (Doc. 1 at 42, paras. c. & g.).  The Court finds that Mills has sufficiently shown, at this stage, that he seeks a remedy which is likely to redress his injuries traceable to Governor Ivey and Attorney General Marshall. *See Smith*, 2021 WL 4817748, at *4; *Moody*, 887 F.3d at 1287; *see also Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021) ("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." (citation omitted)).  Consequently, at this stage, Mills has sufficiently established Article III standing to sue Governor Ivey and Attorney General Marshall.

### 2.  Sovereign Immunity

The Court next considers the Defendants' argument that sovereign immunity bars Mills' claims against Governor Ivey and that the *Ex parte Young* exception does not apply.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although the amendment expressly forbids only suits brought against a State by citizens of a different State, the Supreme Court has long held that it similarly prohibits suits brought against a State by the State's own citizens. *See Hans v. Louisiana*, 134 U.S. 1 (1890). "Because the Eleventh Amendment represents a constitutional limitation on the federal judicial power established in Article III, federal courts lack jurisdiction to entertain claims that are barred by the Eleventh Amendment." *McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001) (citation omitted).

The Eleventh Amendment bar extends to suits against state officials in their official capacities where "the state is the real, substantial party in interest." *Lane v. Cent. Ala. Cmty. Coll.*, 772 F.3d 1349, 1351 (11th Cir. 2014) (per curiam) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984)). And "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In *Ex parte Young*, the Supreme Court established an exception for suits against state officials seeking prospective equitable relief to end continuing violations of federal law. *See Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336–37 (11th Cir. 1999).

The Defendants argue that *Ex parte Young* does not permit Mills' claims for injunctive relief against Governor Ivey because she has "nothing to do with the challenged

conduct." (Doc. 15 at 22).   But the Defendants acknowledge that Governor Ivey sets execution timeframes, including Mills' timeframe. (*Id.* at 23).   As explained earlier, Mills asserts that prolonged restraint on the execution gurney violates his constitutional rights, and he claims that this prolonged restraint is at least partially caused or exacerbated by Governor Ivey's setting a thirty-hour timeframe for his execution. (*E.g.*, doc. 1 at 3, para. 2; *id.* at 7–8, para. 18).   The Court agrees with Mills that, at this stage, this case is not a challenge to Governor Ivey's "general executive power." *See Women's Emergency Network v. Bush*, 323 F.3d 937, 949 (11th Cir. 2003).   Instead, it is a permissible suit for injunctive relief against a state official with responsibility for and "some connection" to the conduct alleged in Mills' complaint. *See Luckey v. Harris*, 860 F.2d 1012, 1015–16 (11th Cir. 1988).   Thus, at this stage, *Ex parte Young* permits Mills to bring his claims for declaratory and injunctive relief against Governor Ivey.

## B.  Motion for Preliminary Injunction

Although there are no jurisdictional barriers to Mills' suit at this stage, he nonetheless has failed to establish entitlement to a preliminary injunction or stay of execution.   As explained further below, the Court finds that Mills' inexcusable delay weighs heavily against the equitable remedy of an injunction or stay; the statute of limitations bars relief on Counts II and IV; and even if all his claims were timely, Mills still has not shown a substantial likelihood of success on the merits on any of them.

### 1.  The Equities and Mills' Delay

"[A] stay of execution is an equitable remedy" which "is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal

judgments without undue interference from the federal courts." *Hill v. McDonough*, 547 U.S. 573, 584 (2006).[14]  This Court must "apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" *Id.* (citation omitted); *Woods*, 951 F.3d at 1293 (citation omitted); *Jones v. Allen*, 485 F.3d 635, 638 (11th Cir. 2007) (citation omitted).  "Last-minute stays should be the extreme exception, not the norm, and 'the last-minute nature of an application' that 'could have been brought' earlier, or 'an applicant's attempt at manipulation,' 'may be grounds for denial of a stay.'" *Bucklew v. Precythe*, 587 U.S. 119, 150 (2019) (quoting *Hill*, 547 U.S. at 584).  District courts "'can and should' protect settled state judgments from 'undue interference' by invoking their 'equitable powers' to dismiss or curtail suits that are pursued in a 'dilatory' fashion or based on 'speculative' theories." *Id.* at 151 (quoting *Hill*, 547 U.S. at 584–85).

Mills' delay in bringing Counts II and IV is especially acute because those claims are barred by the statute of limitations and should have been brought several years ago.  By contrast, the statute of limitations does not bar Count I, and as explained further below, the Court assumes without deciding it does not bar Count III.  Consequently, the Court focuses its analysis of the equities on Mills' delay in bringing Counts I and III and finds that the delay was inexcusable.

---

[14] Although Mills primarily frames his motion (doc. 7) as a request for a preliminary injunction and not a stay of execution, the Court finds that based on the relief he seeks, he is effectively requesting a stay of execution.  In any event, the Court's analysis applies equally to the extent he requests a preliminary injunction, a stay of execution, or both.

The thrust of Mills' Eighth Amendment claim (Count I), which underlies his access to courts claim (Count III), is that since July 2022, the Defendants have, on several occasions, subjected inmates—including Joe James, Alan Miller, and Kenneth Smith—to prolonged executions or execution attempts during which those inmates were unnecessarily strapped to the execution gurney for periods ranging from one-and-a-half to four hours, including while a court-ordered stay was in place; and that the Governor's expansion of the timeframe afforded to ADOC to carry out executions will result in even longer periods where inmates are unnecessarily strapped to the gurney.

Mills filed this § 1983 action on April 26, 2024.  He filed his motion for a preliminary injunction or stay of execution on May 3, 2024 (doc. 7), but only after this Court prompted him to do so (doc. 5).  Mills' postconviction litigation timeline and other relevant developments reflect that Mills' request for a preliminary injunction or stay was filed: (1) twenty-four months after the United States Supreme Court denied certiorari on his habeas petition; (2) about twenty-one months after Joe James' execution and contemporaneous media reports concerning alleged delays during the execution; (3) eighteen months after Alan Miller's failed execution attempt and Miller's amended complaint alleging a nearly two-hour restraint on the gurney; (4) about fifteen months after Kenneth Smith's failed execution attempt and Smith's amended complaint alleging a four-hour restraint on the gurney; (5) fifteen months after Governor Ivey requested that the Alabama Supreme Court expand the timeframe for ADOC to carry out executions; (6) fourteen months after the Alabama Supreme Court amended Rule 8 permitting the Governor to set a timeframe for ADOC to carry out executions; (7) nearly eleven months

after Governor Ivey set James Barber's execution for a thirty-hour timeframe; (8) about nine months after Barber's execution; (9) about three months after the State moved the Alabama Supreme Court to set Mills' execution date; (10) more than six weeks after the Alabama Supreme Court granted the State's motion; (11) more than five weeks after Governor Ivey set the timeframe for Mills' execution; and (12) fewer than four weeks before the beginning of his May 30, 2024 execution timeframe.[15]   Meanwhile, between March 4, 2024 and April 16, 2024, Mills has litigated in the Alabama Supreme Court, Marion County Circuit Court, and the United States District Court for the Northern District of Alabama.

The Court concludes that Mills' delay in filing suit and seeking a preliminary injunction or stay of execution was "unreasonable, unnecessary, and inexcusable." *See Brooks v. Warden*, 810 F.3d 812, 824 (11th Cir. 2016) (citation omitted).  The Court finds that he knew or should have known of the facts giving rise to his challenges to the State's execution procedures "well before he filed suit." *See Jones*, 485 F.3d at 640 n.3.  Since 2022, many events have occurred which should have triggered action by Mills, and yet he did not act.  A reasonably diligent plaintiff likely could and should have filed suit after Kenneth Smith's execution attempt in November 2022, as that was the third lethal injection execution or attempted execution which allegedly involved the condemned inmate being

---

[15] The Court does not suggest that Mills would have been justified in waiting to file until the State moved to set his execution date, until the Alabama Supreme Court granted the motion, or until the Governor set his execution timeframe.  The Court mentions these events to underscore the unreasonable nature of Mills' delay in waiting to file until thirty-four days before his scheduled execution.

strapped to the gurney for an extended period.[16]  Even assuming that it was reasonable to wait until after the State reviewed and made changes to its execution procedures, a reasonably diligent plaintiff could and should have filed suit soon after May 30, 2023, when Governor Ivey set an execution timeframe of thirty hours for Barber's lethal injection execution.  At *that* time at the latest, the facts giving rise to Mills' claims regarding prolonged restraint on the gurney were or should have been amply apparent to all reasonably diligent plaintiffs. *See Jones*, 485 F.3d at 640 n.3.  "[L]ast-minute claims arising from long-known facts . . . can provide a sound basis for denying equitable relief in capital cases." *Ramirez v. Collier*, 595 U.S. 411, 434 (2022).

Not only did Mills fail to assert these claims soon after May 30, 2023, he waited another eleventh months.  After Barber's execution in July 2023, Mills still did nothing. After the State moved to set his execution date in January 2024, Mills still did nothing.[17] After Governor Ivey set his execution timeframe on March 27, 2024, Mills still did nothing. He continued to sit on his hands for thirty days and waited to file this action until April 26, 2024—even though he has been litigating a successive Rule 32 petition in Marion County Circuit Court and a Rule 60 motion in the Northern District of Alabama since early March.

---

[16] The Court assumes without deciding that it was not unreasonable for Mills to decline to file suit after the James execution or the Miller attempted execution, since "an isolated mishap alone does not give rise to an Eighth Amendment violation," although "a series of abortive attempts" may "present a different case." *Baze v. Rees*, 553 U.S. 35, 50 (2008) (plurality op.) (citation omitted).

[17] In an apparent attempt to downplay the significance of the delay, Mills' counsel argued at the evidentiary hearing that the Defendants did not contend that he could have sued before Governor Ivey set his execution timeframe.  That is incorrect.  In their response, the Defendants contend that Mills could have sued in January 2024 immediately after the State moved to set his execution date. (Doc. 15 at 61)  In any event, the Defendants' position on Mills' delay is not dispositive given the Supreme Court's admonition that "[c]ourts should police carefully against attempts to use [execution] challenges as tools to interpose unjustified delay." *Bucklew*, 587 U.S. at 150.

Indeed, Mills' other litigation supports a finding that his legal team is able to advocate for Mills on separate fronts simultaneously.  The Court thus finds that Mills' other litigation activity underscores the unreasonableness of his delay in filing this action.

Mills offers no reasonable explanation, either in his motion or at the hearing, for why he could not have filed this case earlier.  At the evidentiary hearing, Mills argued that he could not have filed before the Governor set his execution date because the Defendants would have argued, based on arguments they purportedly made in other cases, that he did not have standing to sue at that point.  However, Mills identified no authority for the proposition that he would have lacked standing to sue prior to the setting of his execution date.  Moreover, even assuming for argument's sake that this explanation is reasonable, Governor Ivey set his execution timeframe on March 27, 2024, but Mills waited thirty additional days—until April 26, 2024—to file this action, which is thirty-four days before his execution date.  He then waited another seven days to file his motions for injunctive relief and for expedited discovery.  In any event, Mills has not identified any fact or circumstance which prohibited him from filing this action earlier.  Consequently, this explanation is insufficient to justify Mills' delay.

Otherwise, Mills defends the timing of his filing by asserting that he filed this case more than thirty days before his scheduled execution, which he argues is "ample" time to remedy his concerns, and that his "requests are easily obtainable within that time period." (Doc. 7 at 26, 28).  Meaning, according to Mills, the Defendants could easily implement his requests for relief prior to his May 30 execution.  This argument misses the mark because it ignores that thirty-four days is woefully insufficient to fully litigate these issues,

and it reflects a lack of awareness or understanding about the litigation process and timeline for § 1983 actions where an execution date is set.  When a condemned inmate files a § 1983 action and seeks a stay of execution or preliminary injunction, litigation first proceeds in the district court.  The district court must afford time for the defendants to respond to the plaintiff's filings and for the court to review the parties' submissions, potentially hold an evidentiary hearing, conduct legal research, and draft an opinion.  The district court's decision to grant or deny the requested stay or injunction then must be reviewed by the Eleventh Circuit.  That court too must review the parties' submissions, potentially hold oral argument, conduct legal research, and draft an opinion.  Finally, the United States Supreme Court must review the case and issue a decision before the State will proceed with the execution.  Mills' assertion that this entire process could "easily" take place within the thirty-four days between when he filed suit and his execution date defies credulity.

In sum, Mills has failed to identify any impediment to filing this action and seeking injunctive relief after the State's three lethal injection executions or attempts in Fall 2022; after Governor Ivey sought to extend the timeframe for ADOC to carry out executions in December 2022; after Governor Ivey set Barber's execution for a thirty-hour timeframe on May 30, 2023; after Barber's July 2023 execution; or even earlier this year after the State moved to set his execution date.  Mills' delay in filing this action until thirty-four days before his scheduled execution is all the more inexplicable given the repeated admonitions from the Supreme Court and the Eleventh Circuit to "apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" *E.g.*, *Hill*, 547 U.S. at 584

(citation omitted).  Based on the totality of the circumstances, the Court finds Mills' delay in filing this action and seeking a preliminary injunction inexplicable and inexcusable, and Mills has thus left "little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out." *See Jones*, 485 F.3d at 640 (citation omitted).

The practice of filing lawsuits and requests for stay of execution at the last minute where the facts were known well in advance is ineffective, unworkable, and must stop. The unique circumstances of execution litigation and the attendant deadlines are precisely why such litigation should be filed at the earliest possible opportunity:  to ensure that courts at all levels have as much time as possible to review the case and make a reasoned decision. This case seems to follow a continuing trend of lawyers filing last-minute § 1983 lawsuits to create an emergency situation in the hopes that the condensed timeframe will persuade courts to stay the execution to afford themselves more time to consider the matter.  But this strategy is untenable given the Supreme Court's instruction that "[c]ourts should police carefully against attempts to use [execution] challenges as tools to interpose unjustified delay." *Bucklew*, 587 U.S. at 150.  And again, sufficient time to consider the issues is essential given the nature of execution litigation.  The Court acknowledges that lawyers representing death row inmates set to be executed unquestionably owe a duty to their clients.  However, these lawyers are also officers of the court.  The act of filing a civil action and then a request for injunctive relief after unjustified delay often appears to be legal manipulation rather than genuine legal advocacy.

To be sure, certain situations may justify an inmate's late filing of a § 1983 action challenging execution procedures. *See, e.g.*, *Ramirez*, 595 U.S. at 434–35 (rejecting the argument that a condemned inmate inequitably delayed litigation "by filing suit just four weeks before his scheduled execution" because the inmate "had sought to vindicate his rights for months" via the prison's internal grievance system). This case, however, does not come close to presenting circumstances sufficient to justify the significant delay in seeking relief. "While each death case is very important and deserves [the Court's] most careful consideration," the fact that Mills filed suit and sought a preliminary injunction or stay so late in the day, "and without adequate explanation," supports a finding that the equities do not weigh in his favor. *See Jones v. Comm'r, Ga. Dep't of Corr.*, 811 F.3d 1288, 1297–98 (11th Cir. 2016).

"Equity also weighs against granting the [preliminary injunction or] stay because 'the State and the victims of crime have an important interest in the timely enforcement of a sentence.'" *See Woods*, 951 F.3d at 1293 (quoting *Hill*, 547 U.S. at 584). Mills was convicted and sentenced to death for the murders of Floyd and Vera Hill in 2007. The State and the victims' family have a strong interest in seeing Mills' punishment exacted. *See Brooks*, 810 F.3d at 825; *Jones*, 485 F.3d at 641. Indeed, they have already waited seventeen years. Because Mills inexcusably delayed bringing this action, and because the State and the victims' family have a strong interest in the timely enforcement of his sentence, Mills has failed to show that equity favors entry of a preliminary injunction or stay of execution, and his motion is due to be denied for this reason alone.

### 2. Substantial Likelihood of Success on the Merits

Even if the Court found that the equities weigh in Mills' favor—which they do not—Mills must still demonstrate a substantial likelihood of success on the merits to be entitled to a preliminary injunction or stay of execution. Because he cannot do so, his motion is due to be denied for this additional, independent reason. The Court first will address Mills' Eighth Amendment claim in Count I before turning to Counts II, III, and IV together.

### a. Count I—Eighth Amendment Claim

Mills contends that his Eighth Amendment rights likely will be violated during his upcoming execution because he likely will be restrained on the execution gurney for too long and unnecessarily. He asserts that in the last two years, ADOC officials have subjected condemned persons to a "prolonged, unnecessary execution process" by bringing them into the execution chamber and restraining them on the gurney for hours, including keeping them strapped to the gurney "even while court-ordered stays of execution were in place." (Doc. 7 at 9–10). According to Mills, this prolonged restraint is "without legitimate reason and with wanton disregard for the pain and suffering this causes," and it increases an inmate's psychological pain and suffering as he awaits his impending death. (*Id.* at 9). The Defendants contend there were legitimate reasons for the longer periods of restraint in prior executions, and that the State changed the IV team personnel from these prior executions and also changed certain procedures to shorten the time required to carry out executions. Additionally, Commissioner Hamm testified that Mills would not be taken into the execution chamber while a stay was in effect.

Mills insists that Count I is not a method of execution challenge but rather a general Eighth Amendment challenge to what he perceives as "punitive treatment amount[ing] to gratuitous infliction of 'wanton and unnecessary' pain." (*Id.* at 13) (quoting *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)).   While the Court doubts that Count I is not a method of execution challenge, the Court will assume without deciding that it is not.   Thus, the question before the Court is whether Mills has shown a substantial likelihood of success on the merits of his claim that restraining him on the execution gurney for hours, allegedly without legitimate reason and without access to counsel, constitutes the gratuitous infliction of wanton and unnecessary pain in violation of the Eighth Amendment.   On this record, the answer is no.

"[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hope*, 536 U.S. at 737 (alterations in original) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).   Among the forbidden "'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)).   Moreover, "[t]he general requirement that an Eighth Amendment claimant allege and prove the unnecessary and wanton infliction of pain should also be applied with due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged." *Whitley*, 475 U.S. at 320.   "Some risk of pain is inherent in any method of execution," and "the Constitution does not demand the avoidance of all risk of pain in carrying out executions." *Baze*, 553 U.S. at 47.   To show that exposure to a risk of future harm violates the Eighth Amendment, the plaintiff must show that "the conditions

presenting the risk [are] '*sure or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently *imminent* dangers.'" *Id.* at 49–50 (emphases in the original) (quoting *Helling v. McKinney*, 509 U.S. 25, 33, 34–35 (1993)).   "[T]o prevail on such a claim there must be a 'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" *Id.* at 50 (quoting *Farmer v. Brennan*, 511 U.S. 825, 842, 846 & n.9 (1994)).

Mills asserts that being restrained on the execution gurney for hours causes unnecessary and wanton pain and suffering.   But "[t]o be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley*, 475 U.S. at 319.   The Court doubts that simply restraining the condemned inmate on the execution gurney amounts to punishment because this restraint is a necessary part of the execution.   Moreover, simply restraining a condemned inmate on the gurney is not inherently wanton or torturous.   To the extent the pain and suffering about which Mills complains is the physical and/or psychological pain of being restrained on the execution gurney for several hours, the Court finds that, on this record, Mills has not shown a substantial likelihood that he will be subjected to pain and suffering during his execution which is unnecessary, wanton, or torturous for purposes of the Eighth Amendment.   Mills has not met his burden to show that the circumstances of prior executions make it likely that he will be subjected to prolonged, unnecessary restraint on the gurney during his execution which violates the Eighth Amendment.   And considering the State's changes since 2022, Mills also has not

established a substantial likelihood that *he* will be restrained on the gurney for a length of time similar to the prior executions about which he complains.

Mills alleges that because it takes "minutes" to secure an inmate to the gurney, the practice of restraining inmates to the gurney "for hours is without penological justification and is unnecessary." (Doc. 1 at 35, para. 120).  He cites examples of prior executions and execution attempts, including the James and Barber executions and the Miller and Smith attempted executions which, according to Mills, evidence a pattern of unconstitutional conduct making it likely that he will experience similar unconstitutional conduct during his own execution.  But as the Defendants explain, extended restraint on the gurney can be, and recently has been, caused by several factors.  These factors include difficulty obtaining IV access, which Mills acknowledges occurred with Miller and Smith and can be exacerbated by an inmate's physical condition, such as with Miller; an inmate's resistance, which, according to the Defendants, occurred with Smith;[18] an inmate spending time with his spiritual advisor; and delays attendant to transporting witnesses from offsite locations to Holman.[19]  The Court finds, on this record, that these explanations suffice as legitimate

---

[18] Execution log excerpts for Smith's November 2022 execution attempt reflect that at 11:15 p.m., the IV team attempted to set an IV in Smith's neck but he kept jerking his head. (Doc. 15-4 at 3).  At that time, Smith had been on the gurney for nearly three hours. (*Id.* at 2–3).

[19] At the evidentiary hearing, Mills argued that delays in witness transportation did not justify extended restraint because, according to Mills, Alabama's execution protocol requires that the witnesses already be present in the viewing room when the condemned enters the execution chamber. (Doc. 25 at 26, lines 14–23).  In support, Mills cited Section IX.L of Alabama's protocol. (*Id.* at 36, lines 5–25; 37, lines 1–8); *see also* doc. 15-1 at 16 (Alabama's protocol)).  The Court finds, however, that this portion of the protocol does not support his argument.  Moreover, the Defendants represented at the hearing that witnesses are never brought to Holman before the condemned is restrained on the gurney. (Doc. 25 at 75, lines 6–10).

penological reasons why inmates previously were restrained on the gurney for their respective durations.

While the record does not reveal why Smith remained restrained on the gurney while a stay was in effect, the lack of such explanation does not change the Court's conclusion. Even assuming there was no legitimate reason for that situation to have occurred, it would amount to a mere "isolated mishap," which "does not give rise to an Eighth Amendment violation" in the execution context. *See Baze*, 553 U.S. at 50 (citation omitted); *see also Jackson v. Danberg*, 594 F.3d 210, 226 (3d Cir. 2010) ("[A]ny blunder committed during [an earlier inmate's] execution does not suffice to show a substantial risk of serious harm in future executions."). And as explained further below, the Defendants presented sworn testimony that Mills will not be restrained on the gurney while any stay is in effect. Additionally, Mills' unsworn allegations concerning the use of stress positions during prior executions are undermined by Riley's sworn testimony that the execution gurney cannot tilt to a 90-degree angle. But even accepting as true Mills' version of events that Miller was tilted vertically on the gurney for twenty minutes and Smith was tilted in a reverse crucifixion position for an unspecified period, the Court is not persuaded on this record that any resulting pain amounts to torture or cruelly superadded pain in violation of the Eighth Amendment. *Cf. Bucklew*, 587 U.S. at 130 (listing founding-era examples of cruelly superadded pain).

The Court does not doubt that condemned inmates experience psychological stress leading up to their executions, or that this stress becomes particularly acute once they enter the execution chamber and are strapped to the gurney. However, on this record, Mills has

not shown a substantial likelihood of success on the merits of his claim that he will be restrained on the execution gurney for a length of time which is "totally without penological justification," and consequently, he fails to show that he will be subjected to an unnecessary and wanton infliction of pain. *See Hope*, 536 U.S. at 737.  Thus, to the extent Mills relies on periods of restraint during past executions and execution attempts as evidence that his own execution likely will be unconstitutional, his reliance is unavailing.

Mills also is not substantially likely to succeed on his Eighth Amendment claim because of the State's changes to its execution procedures since 2022 and its subsequent lethal injection executions.  Following the failed attempts to execute Miller and Smith, the State reviewed its execution procedures and made meaningful changes, including replacing the members of the IV team who worked on past executions.  After this review, the State carried out two lethal injection executions—Barber in July 2023 and McWhorter in November 2023.  The Defendants presented unrefuted evidence that Barber spent one hour and seventeen minutes, and McWhorter spent forty-eight minutes, on the execution gurney before their respective death warrants were read.  Mills does not allege or suggest that the IV team had problems accessing Barber's or McWhorter's veins or that either was restrained to the gurney while a stay was in place.  The Defendants also presented evidence that steps were taken recently to reduce delays in transporting witnesses.  Specifically, Riley testified in her affidavit that after any stays are lifted, witnesses are transported to Holman and staged there so they may be "moved to the execution chamber as soon as the condemned is prepared." (Doc. 15-8 at 5, para. 12).  Moreover, she testified that in Barber's execution, approximately one hour elapsed between setting the IV lines and the death

37

warrant being read, but in McWhorter's execution, that delay was cut in half. (*Id.*).  Finally, Commissioner Hamm testified under oath at the evidentiary hearing that Mills will not be moved to the execution chamber while a stay is in place, and that Mills will be removed from the chamber and returned to the holding cell if a stay is entered while he is already in the chamber.  This evidence undermines Mills' contention that he faces an imminent risk of unnecessarily prolonged restraint on the execution gurney in violation of the Constitution. *See Baze*, 553 U.S. at 49–50.

Mills cites *Hope v. Pelzer*, 536 U.S. 730 (2002), for the proposition that prolonged periods of restraint violate the Eighth Amendment.  But *Hope* is an inapt comparator given the circumstances accompanying that plaintiff inmate's restraint.  In *Hope*, the plaintiff was handcuffed to a hitching post outdoors for approximately seven hours in June in Alabama, during which the sun baked his skin because he was shirtless, he was denied bathroom breaks, and he was offered water only once or twice. 536 U.S. at 734–35. Moreover, a guard taunted the plaintiff about his thirst by "first [giving] water to some dogs" and then kicking the water cooler over in front of the plaintiff. *Id.* at 735.  Guards had decided to restrain the plaintiff on the hitching post because he took a nap during the bus ride to a worksite, "was less than prompt in responding to an order to get off the bus," and got into a "wrestling match with a guard." *Id.* at 734.  The Court reasoned that "[a]ny safety concerns had long since abated" when the plaintiff was handcuffed to the hitching post because he had already been subdued, restrained, and taken back to the prison. *Id.* at 738.  The Court further concluded that prison officials gratuitously inflicted wanton and

unnecessary pain in violation of the Eighth Amendment because they undertook the following actions:

> Despite the clear lack of an emergency situation, [officials] knowingly subjected [the plaintiff] to a substantial risk of physical harm, to unnecessary pain caused by the handcuffs and the restricted position of confinement for a 7-hour period, to unnecessary exposure to the heat of the sun, to prolonged thirst and taunting, and to a deprivation of bathroom breaks that created a risk of particular discomfort and humiliation.

*Id.*

The alleged pain attendant to prolonged periods of restraint on the execution gurney under the circumstances of this case falls well short of the gratuitous infliction of wanton and unnecessary pain addressed in *Hope*.  Importantly, in *Hope*, the mere act of placing an inmate on the hitching post was, in itself, punishment.  Here, by contrast, the mere act of restraining an inmate on the gurney to prepare for an execution is *not* punishment, but even if it were, it is not gratuitous or wanton because it is necessary to carry out the execution. And as explained above, Mills has failed to show that the prior executions involving restraint lasting up to three or four hours were "totally without penological justification," and thus those prior executions do not render it likely that he will be subjected to unnecessary and wanton pain during his own execution. *See id.* at 737.  Additionally, there is insufficient evidence or allegation that any condemned inmate since Kenneth Smith in November 2022 has been restrained to the execution gurney for more than one hour and seventeen minutes, or that any of them experienced additional deprivations comparable to those which the *Hope* plaintiff suffered.  Moreover, based on changes since November 2022 explained in more detail above, Mills has not shown a substantial likelihood that *he*

will be restrained to the gurney for hours or while a stay is in place.  Consequently, *Hope* does not aid Mills in showing a substantial likelihood of success on the merits of his Eighth Amendment claim.

Mills also cites a decision of another judge in this district for the proposition that "being strapped to the gurney for up to four hours and at one point being placed in a stress position for an extended period of time, goes 'so far beyond what [is] needed to carry out a death sentence that [it] could only be explained as reflecting the infliction of pain for pain's sake.'" *Smith v. Hamm*, 2023 WL 4353143, at *7 (M.D. Ala. July 5, 2023) (alterations in original) (quoting *Bucklew*, 587 U.S. at 137).  Mills' citation, however, omits relevant context of *Smith*.

First, in *Smith*, the court was tasked with determining whether Kenneth Smith stated a plausible claim that a second lethal injection execution attempt violated the Eighth Amendment. *Id.* at *6–7.  Here, on a motion for preliminary injunction, the Court must determine whether Mills has shown a substantial likelihood of success on the merits—a higher burden. *See Am. Airlines, Inc. v. Spada*, 2023 WL 8001220, at *3 (S.D. Fla. Nov. 18, 2023) (observing that the "preliminary injunction standard is more stringent").  Second, and related to the first point about the different procedural posture, *Smith* observed that "additional factual development may reveal a legitimate reason why Smith was strapped to the gurney in this manner and for this duration" but that "such a reason [was not] apparent from" the operative complaint. *Smith*, 2023 WL 4353143, at *7.  On a motion for preliminary injunction, the Court may consider evidence outside the complaint, and as detailed above, the Defendants have marshalled evidence explaining why Smith (and

others) whom the State executed or attempted to execute on or before November 2022 were restrained on the gurney for up to three-and-a-half hours.[20]

Additionally, although Smith's allegations that he was painfully strapped to the gurney for up to four hours factored into the court's analysis, those allegations were not the sole basis for the court's conclusion that Smith's claim was sufficiently plausible. Instead, the *Smith* court's conclusion rested on Smith's allegations that he suffered "multiple needle insertions over the course of one-to-two hours into muscle and into the collarbone in a manner emulating being stabbed in the chest, *in combination with being strapped to the gurney*." *Smith*, 2023 WL 4353143, at *7 (emphasis added).  And again, Mills has not shown that the IV team will have difficulty accessing his veins, and given the changes since Smith's attempted execution, Mills has not shown a substantial likelihood that *he* will be restrained to the gurney for hours or while a stay is in place.  Thus, *Smith* does not help him, either.

In sum, the State's review of and changes to its execution procedures, the recent executions of Barber and McWhorter, the recent changes implemented to reduce delays in transporting witnesses, and Commissioner Hamm's testimony at the evidentiary hearing, individually and collectively, strongly indicate that Mills will be restrained on the gurney for much less time than inmates such as Miller and Smith had been, and that Mills will not be on the gurney if a stay is in effect.  Consequently, Mills has not shown a substantial

---

[20] Smith alleged that he was restrained on the gurney for up to four hours.  However, ADOC's execution logs show that he was restrained for three hours and thirty-one minutes. (*See* doc. 15-4 at 2–3).  In any event, this distinction does not alter the Court's analysis or conclusions.

likelihood that *he* would be restrained on the gurney for hours or while a stay was in place—assuming for argument's sake that these occurrences during executions, individually or collectively, amount to an unconstitutional level of severe pain. *Cf. Jackson v. Danberg*, 601 F. Supp. 2d 589, 598–600 (D. Del. 2009) (dismissing at summary judgment the plaintiff's Eighth Amendment method of execution claim and rejecting the plaintiff's argument that "future conduct by different [execution] personnel . . . will reflect past conduct by former personnel"), *aff'd*, 594 F.3d 210 (3d Cir. 2010).  On this record, Mills "has not offered anything more than the speculative, conjectural possibility that something might go wrong during his execution which would subject him to cruel and unusual punishment in violation of the Eighth Amendment." *See Arthur v. Comm'r, Ala. Dep't of Corr.*, 680 F. App'x 894, 909 (11th Cir. 2017).

Mills' Eighth Amendment claim fairs no better when analyzed as a method of execution claim.  "[T]he Eighth Amendment does not guarantee a prisoner a painless death . . . ." *Bucklew*, 587 U.S. at 132.  Instead, the relevant Eighth Amendment inquiry is whether the State's chosen method of execution "'superadds' pain well beyond what's needed to effectuate a death sentence." *Id.* at 136–37.  And "[t]o determine whether the State is cruelly superadding pain," the Supreme Court requires "asking whether the State had some other feasible and readily available method to carry out its lawful sentence that would have significantly reduced a substantial risk of pain." *Id.* at 138; *see also Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 858 (11th Cir. 2017) (explaining that a plaintiff asserting an Eighth Amendment method of execution challenge "must plausibly plead, and ultimately prove, that there is an alternative method of execution that is feasible,

readily implemented, and in fact significantly reduces the substantial risk of pain posed by the state's planned method of execution").

Mills has failed to establish a substantial likelihood that prolonged periods of restraint on the execution gurney under the circumstances of this case amounts to "'superadd[ed]' pain well beyond what's needed to effectuate a death sentence," for the same reasons he has failed to establish a gratuitous infliction of wanton and unnecessary pain. *See Bucklew*, 587 U.S. at 136–37; *Hope*, 536 U.S. at 737.  He also has not shown a substantial likelihood of success on the merits of this claim because he has not sufficiently pled or presented evidence of a feasible, readily implemented alternative method of execution which "in fact significantly reduces the substantial risk of pain posed by the [S]tate's planned method of execution." *See Boyd*, 856 F.3d at 858; *Bucklew*, 587 U.S. at 37.

The Court does not suggest that prolonged restraint on the gurney could never amount to a constitutional violation.  The Court need not and does not decide the point at which the period of restraint crosses from constitutional to unconstitutional.  But on this record, Mills has failed to show a substantial likelihood of success on the merits of his Eighth Amendment claim.

### b.  Counts II, III, and IV

The Court now turns to Mills' remaining three claims.  The Court begins with the statute of limitations because Mills is not substantially likely to succeed on the merits of a claim that is time-barred.  *See Brooks*, 810 F.3d at 822.  The Court then will address the

merits of Counts II, III, and IV, assuming for argument's sake that none of them is time-barred.

In Count II, Mills alleges that excluding his counsel "during the execution process" violates his due process rights. (Doc. 1 at 35, para. 123).  In Count III, he alleges that the "exclusion of [his] counsel . . . during this critical stage violates" his right to access the courts. (*Id.* at 38, para. 130).  Finally, in Count IV, Mills alleges that excluding his counsel "during the execution process" violates his Sixth Amendment rights. (*Id.* at 39, para. 137). Mills alleges that he "requires the presence of counsel to effectuate his right of access to the courts and to enforce his Eighth Amendment rights," and that his counsel will require access to a phone "to ensure these rights are protected and to petition the courts in the event the State proceeds as it has in the past." (*Id.* at 38, paras. 131–32).  According to Mills, he requires his counsel in the execution chamber, and his counsel requires access to a phone, because he is at "imminent risk of being subject to an unnecessarily prolonged and tortuous execution at the hands of State officials with unreviewable authority," which violates his Eighth Amendment rights. (*Id.* at 4, para. 5).

### i. Statute of Limitations

The Defendants argue that Counts II and IV are barred by the statute of limitations because the prohibitions against counsel and phones in the execution chamber have existed for more than two years prior to the filing of this action.[21]  The Defendants contend that

---

[21] Although the Defendants argued in their response that the statute of limitations also bars Count III, the Defendants backed away from this position at the evidentiary hearing.

The Court discerns no clear answer as to whether Count III is time-barred.  In Count III, Mills asserts that the State's prohibitions on counsel and phones in the execution chamber violates his rights to access the

since Mills' sentence became final, Alabama's execution protocol has not permitted the condemned inmate's counsel to be present in the execution chamber, let alone with a phone, during preparations for an execution. (Doc. 15 at 35).  According to the Defendants, Mills knew, or reasonably should have known, of these prohibitions since at least 2017 following the decision in *Arthur*, 680 F. App'x 894.

Mills does not contend that either of these prohibitions were adopted within the two years before he filed this action.  Instead, he contends that his claims were brought within the two-year limitations period because, beginning with Joe James' execution in 2022, a pattern of prolonged restraint on the execution gurney has emerged which, according to Mills, constitutes a "substantial change" to the State's execution process and thereby resets the statute of limitations. *See West v. Warden, Comm'r, Ala. Dep't of Corr.*, 869 F.3d 1289, 1298 (11th Cir. 2017).  Mills further contends that, unlike *Arthur*, Mills has brought a Sixth

---

courts, and that this access is necessary to guard against Eighth Amendment violations during his execution. An access to courts claim is ancillary to a substantive underlying claim, "without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  The Eleventh Circuit has explained that "the statute of limitations for denial of access may be different than that of the underlying claim, beginning to run only when the plaintiffs knew or should have known that they have suffered injury to their right of access and who caused it." *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003).  Here, the question is whether Mills' right of access claim accrued when he should have known of the prohibition of attorneys and phones in the execution chamber, or if it accrued at the same time as his Eighth Amendment claim.  This question does not have an easy answer.  It is arguable that Mills knew, or should have known, the facts underlying his access to courts claim in 2017 when *Arthur* made clear that Mills would not be allowed to have his attorney or a phone in the execution chamber.  On the other hand, because an access to courts claim is ancillary to a substantive underlying claim, it is arguable that Mills' right of access claim did not arise until his underlying Eighth Amendment claim arose.  But because the Defendants' have disclaimed reliance on the statute of limitations with respect to Count III, and because Count III fails on the merits in any event, the Court need not resolve the statute of limitations issue as to Count III, and for the purposes of this Opinion, the Court assumes without deciding that Count III is not time-barred. *See id.* at 1283 (explaining that because the complaint alleged insufficient facts to support the right of access claim, the statute of limitations issue was moot).

Amendment claim, and his claims are "not tied to the visitation or cell phone policy enacted previously and litigated" in *Arthur*. (Doc. 23 at 32–33).

The parties agree that Counts II and IV are subject to a two-year statute of limitations. *See Brooks*, 810 F.3d at 823; *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008). The contested issue is when the limitations period began to run on these claims. "In Section 1983 cases, the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Nance v. Comm'r, Ga. Dep't of Corr.*, 59 F.4th 1149, 1153 (11th Cir. 2023) (citation omitted). In other words, the question is when Mills knew, or reasonably should have known, "of the injury which is the basis of the action." *McNair*, 515 F.3d at 1174 (quoting *Corn v. City of Lauderdale Lakes*, 904 F.2d 585, 588 (11th Cir. 1990)).

The Court finds that Mills knew, or reasonably should have known, by no later than 2017 that his counsel is not permitted in the execution chamber and that visitors, including counsel, are not permitted to bring phones into Holman. In 2017, the Eleventh Circuit decided *Arthur*, in which the court explained that Ala. Code § 15-18-83, which lists the persons who may be present at an execution, "does not provide an option for the inmate's attorney to be present in his or her capacity as legal counsel." 680 F. App'x at 898. As for access to a phone, the Eleventh Circuit panel stated that Alabama's "long-standing rule against visitors bringing cell phones into prison facilities . . . was undisputedly in place <u>no later than August 1, 2012</u>." *Id.* at 906 (emphasis in original). As noted earlier, Mills does not contend that either of these policies was adopted within the two years before he filed

this action.  Thus, Mills should have known by no later than 2017 that his counsel would neither be allowed in the execution chamber nor allowed to bring a phone inside Holman.

Mills' allegations concerning the State's executions and execution attempts since 2022 are insufficient to transform Counts II and IV into timely claims.  While those events may have elucidated the reasons for Mills' desire to have his counsel present in the execution chamber with a phone, it is the State's *policies* which he challenges and which give rise to his claims in Counts II and IV. *See Grayson v. Dunn*, 221 F. Supp. 3d 1329, 1336 (M.D. Ala. 2016) (reaching a similar conclusion regarding an inmate's claim that his counsel should be permitted to have a phone while witnessing his execution), *aff'd sub nom. Grayson v. Warden*, 672 F. App'x 956 (11th Cir. 2016) (per curiam).  Moreover, those executions and execution attempts do not change the reality that the State's policies prohibiting counsel in the execution chamber and phones in prison facilities have existed for much longer than two years. *See id.*  Thus, Counts II and IV are time-barred because they accrued more than two years prior to Mills' filing this action.  Consequently, Mills is not substantially likely to succeed on the merits of Counts II and IV. *See Brooks*, 810 F.3d at 822.

But even if Counts II and IV were not time-barred, for the reasons discussed below, Mills still cannot establish that he is substantially likely to succeed on the merits.

### ii.  Merits

The Court now proceeds to the merits of Counts II, III, and IV.  These three counts all center around one common issue:  Mills' alleged lack of access to counsel during his entire execution process (or more specifically, in the execution chamber).

The Court begins with a point of clarification.  Each of Counts II, III, and IV allege a lack of access to counsel in the execution chamber.  As explained above, the Defendants represent to the Court that Mills will not be taken to the chamber while a stay is in place, and should a stay be granted while he is in the chamber, Mills will be removed from the chamber.  Additionally, Riley's testimony and the execution logs show that inmates have phone access to their attorneys in the holding cell (doc. 15-2; doc. 15-3, doc. 15-5, doc. 15-7; doc. 15-8 at 5–6, para. 14), and Mills does not dispute that he will have phone access to his counsel in the holding cell.  Thus, a central issue in Counts II, III, and IV—the time during which Mills would experience a lack of access to counsel—is limited to a discrete period on his execution day:  his time in the execution chamber.  Consequently, Mills must show a substantial likelihood of success on the merits of his claims that he has a constitutional right to have his counsel present in the execution chamber to guard against potential constitutional violations during his execution.  On this record, Mills fails to do so.  The Court begins its analysis with Count IV, followed by Counts II and III.

First, in Count IV, Mills contends that the Sixth Amendment grants him a right to have counsel present with him in the execution chamber.   The Sixth Amendment guarantees criminal defendants "the Assistance of Counsel for [their] defence," from "all criminal prosecutions." U.S. CONST. amend. VI.  This right "applies only to criminal proceedings," *Barbour v. Haley*, 471 F.3d 1222, 1231 (11th Cir. 2006), and more specifically, it "guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." *Missouri v. Frye*, 566 U.S. 134, 140 (2012) (quoting *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)).  A critical stage is a proceeding that

amounts to a "trial-like confrontation." *Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 212 n.16 (2008).  A critical stage may occur formally or informally and may take place in or out of court. *Id.*  Importantly, the Sixth Amendment's right to counsel "extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).

Mills acknowledges that there is no ongoing judicial proceeding against him under which the right to counsel would arise. (Doc. 23 at 47).  Rather, in his view, his execution is a critical stage of a proceeding, one in which an adversarial nature is created by the presence of the Defendants' attorneys who offer legal advice to state officials involved in the execution.  He cites *United States v. Ash*, 413 U.S. 300 (1973), arguing that whether the Sixth Amendment's right to counsel applies calls for "examination of the event in order to determine whether the accused require[s] aid in coping with legal problems or assistance in meeting his adversary." *Id.* at 313.

In contrast, the Defendants argue that Mills has no constitutional right to have counsel present in the execution chamber with him. (Doc. 15 at 59).  In support, the Defendants cite *Whitaker v. Collier*, 862 F.3d 490 (5th Cir. 2017), in which the Fifth Circuit held that death-sentenced inmates' claims that they had a Sixth Amendment right to counsel "during the events leading up to and during the execution" were "without merit." *Id.* at 501.  The Defendants also contend that, in order to find that Mills' execution is a critical stage, the Court must first find that there is an ongoing state judicial proceeding against Mills, at which point the Court should abstain from adjudicating the claim under *Younger v. Harris*, 401 U.S. 37 (1971).

Mills acknowledges that he is no longer subject to a criminal prosecution, and on this record, the Court agrees.  Mills is not an "accused requir[ing] aid in coping with legal problems or assistance in meeting his adversary." *See Ash*, 413 U.S. at 313.  He is no longer subject to long-recognized critical stages of a criminal proceeding such as "arraignments, postindictment interrogations, postindictment lineups, and the entry of a guilty plea." *Frye*, 566 U.S. at 140.  And his sentencing, another critical stage, *Gardner v. Florida*, 430 U.S. 349, 358 (1977), has long concluded.  Rather, here, Mills is a plaintiff in a civil § 1983 action surrounding the enforcement of his death sentence. *Cf. Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999) ("A plaintiff in a civil case has no constitutional right to counsel.").  Moreover, Mills cites no binding authority supporting his contention that the imposition of a death sentence is a proceeding to which the right to counsel extends at every stage.  Without such authority, and because Mills is no longer subject to a criminal prosecution, the Court finds that Mills has not shown a substantial likelihood of success on the merits of Count IV.

Second, because Mills has not shown a substantial likelihood that the Sixth Amendment extends as far as allowing his counsel's presence in the execution chamber, he cannot establish that he has a substantial likelihood of success on the merits on Count II, his due process claim.  The Due Process Clause of the Fourteenth Amendment prohibits the Defendants from depriving Mills of "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1.  "The Supreme Court's interpretation of this clause explicates that the amendment provides two different kinds of constitutional protection:

procedural due process and substantive due process." *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994) (en banc).

In Count II, Mills alleges that carrying out the execution without his counsel's presence in the execution chamber violates his procedural due process rights.[22]  To succeed on this claim, Mills must show "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process." *Woods*, 951 F.3d at 1293 (citation omitted).  The Defendants assert that Mills, who is not arguing that his interest stems from the deprivation of liberty inherent in an execution, has no constitutionally-protected interest in having his counsel present with him in the execution chamber.  At this stage in the litigation, the Court finds that Mills has not adequately shown that this interest is constitutionally protected.  Mills' claim in Count II fails because he relies on the same interest he identifies in Count IV—the right to counsel in the execution chamber—and the Court has determined he is not substantially likely to succeed on his claim that his right to counsel has been unconstitutionally infringed.  Moreover, Mills cites no binding authority for the proposition that condemned inmates have a constitutionally-protected interest in having their counsel present in the execution chamber.  By premising his due process claim on his counsel's inability to enter the execution chamber, Mills is not substantially likely to show a deprivation of a constitutionally-protected liberty or property interest.  Therefore, for reasons similar to those discussed above regarding Count IV, Count II fails to warrant preliminary injunctive relief.

---

[22] Mills' counsel represented at the evidentiary hearing that Count II sounds in procedural due process alone. (Doc. 25 at 51, lines 4–10).

Third, Mills has not shown a substantial likelihood of success on the merits on Count III, in which Mills seeks to "effectuate his right of access to the courts and to enforce his Eighth Amendment rights." (Doc. 1 at 38, para. 131). "[I]t is well established that [Mills] ha[s] a constitutional right of access to the courts." *See Akins v. United States*, 204 F.3d 1086, 1090 (11th Cir. 2000). Yet this right is not "an abstract, freestanding right." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Rather, a right of access claim "is an ancillary claim, requiring that [Mills] also plead a substantive underlying claim." *See Chappell*, 340 F.3d at 1283 (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). This is because "[t]he purpose of recognizing an access claim is to provide vindication for a separate and distinct right to seek judicial relief." *Barbour*, 471 F.3d at 1226.

On this record, Mills' right of access claim in Count III is not substantially likely to succeed on the merits because his substantive underlying claim, the Eighth Amendment claim in Count I is not colorable on this record. As explained above, Mills "has not offered anything more than the speculative, conjectural possibility that something might go wrong during his execution which would subject him to cruel and unusual punishment in violation of the Eighth Amendment." *See Arthur*, 680 F. App'x at 909. Without a colorable Eighth Amendment claim, Mills is not substantially likely to succeed on his right of access claim because he has no substantive claim for which he needs court access to vindicate. In other words, "absent an underlying violation of a fundamental right," Mills' right to access the courts has not been infringed. *See id.* (first citing *Lujan*, 504 U.S. at 560; then citing *Lewis*, 518 U.S. at 349). Count III, therefore, is not substantially likely to succeed on the merits.

Mills has not shown a substantial likelihood of success on Count III for an additional reason:  he cannot overcome the factors in *Turner v. Safley*, 482 U.S. 78, 87 (1987). Assuming the prohibition against Mills' counsel in the execution chamber infringes on his constitutional rights—which Mills has not adequately established—such prohibition would be "an actionable constitutional violation only if the regulation is unreasonable." *Hakim v. Hicks*, 223 F.3d 1244, 1247 (11th Cir. 2000) (citing *Turner*, 482 U.S. at 89); *see Pope v. Hightower*, 101 F.3d 1382, 1384 (11th Cir. 1996) ("[W]hen a prison regulation impinges upon on inmate's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.").  In *Turner*, the Supreme Court "adopted a deferential standard for determining whether a prison regulation violates an inmate's constitutional rights." *Hakim*, 223 F.3d at 1247.  The Eleventh Circuit has further opined on the *Turner* factors as follows:

> The *Turner* Court identified several factors that serve to channel the reasonableness inquiry: (1) whether there is a "valid, rational connection" between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally; and (4) whether the regulation represents an "exaggerated response" to prison concerns.

*Pope*, 101 F.3d at 1384 (first citing *Turner*, 482 U.S. at 89–91; then citing *Harris v. Thigpen*, 941 F.2d 1495, 1516 (11th Cir. 1991)).

Mills argues that the Defendants' security concerns do not justify barring his counsel's presence from the execution chamber with a phone. (Doc. 7 at 19).  He cites other

jurisdictions which "have maintained security and decorum while allowing counsel to be present throughout the execution process and with access to a phone to petition the court." (*Id.* at 20).  The Defendants, on the other hand, argue that they have valid interests in prohibiting Mills' counsel (with or without a phone) in the execution chamber, including interests in concealing the identities of the IV team to protect their safety, maintaining security in the chamber, and conserving ADOC resources. (Doc. 15 at 48).  At the evidentiary hearing, the Defendants explained that measures would need to be taken to accommodate an attorney, especially with a phone, in the execution chamber.  The Defendants represented that the execution is a choreographed process which would require significant restructuring of resources to accommodate an attorney—particularly one with a cellphone capable of capturing photos and videos—in the execution chamber.  The Defendants also described threats which individuals involved in the execution process have faced, citing examples from other jurisdictions in which suppliers of lethal injection drugs and other necessary goods were threatened, hence the asserted need for strict confidentiality of the execution team members' identities. (Doc. 25 at 82, lines 15–25; 83, lines 1–25; 84, lines 1–13).  The Defendants contend that allowing an attorney in the execution chamber, especially one with a phone, would jeopardize their efforts to keep confidential the execution team members' identities.

The first, third, and fourth *Turner* factors all favor the Defendants.  Mills has not shown that the prohibition of his counsel from the execution chamber holds no valid, rational connection to the Defendants' asserted interests in security, confidentiality, and conserving resources.  Moreover, he has not shown that prohibiting his counsel from the

execution chamber, with or without a phone, is an "exaggerated response" to the State's penological concerns. *See Pope*, 101 F.3d at 1384.  And the fact that other jurisdictions allow counsel in the execution chamber does not mean that the State of Alabama is constitutionally required to do so. *Cf. Turner*, 482 U.S. at 93 n.* ("[T]he Constitution 'does not mandate a "lowest common denominator" security standard, whereby a practice permitted at one penal institution must be permitted at all institutions.'" (quoting *Bell v. Wolfish*, 441 U.S. 520, 554 (1979))).  Thus, even if Mills had overcome the multiple other hurdles to Count III, he has not overcome the *Turner* factors and the deference owed to prison officials' judgments as required to establish that the Defendants' prohibition of his counsel from the execution chamber is not "reasonably related to legitimate penological interests." *See Pope*, 101 F.3d at 1384.  Consequently, Mills has not shown a substantial likelihood of success on the merits of Count III for this additional reason.

In sum, even if the claims are not time-barred, Mills has not shown that he is substantially likely to succeed on the merits of Counts II, III, or IV.  Because the equities weigh against him, and because he has not shown a substantial likelihood of success on the merits of any of his claims, Mills has not met his burden of establishing entitlement to the extraordinary remedy of a preliminary injunction or stay of execution, and his motion is due to be denied. *See Winter*, 555 U.S. at 24.

### C.  Motion for Expedited Discovery

The Court now turns to Mills' motion for expedited discovery, of which he seeks two forms.  First, he seeks expedited discovery under Rules 26 and 34 for the production of certain documents in the Defendants' possession. (*See* doc. 8-1).  The proposed requests

include "[a]ll documents and communications documenting or describing each execution or attempted execution on or since July 28, 2022"; all relevant communications, including texts or emails, sent by or received by the Defendants and their agents on the nights of each execution or attempted execution since July 28, 2022; and "all documents on which [the] Defendants intend to rely to defend against the claims and allegations [Mills] makes in the Complaint." (*Id.* at 8, 10–11).  Second, Mills seeks to serve expedited interrogatories under Rule 33. (*See* doc. 8-2).   The interrogatories include the identification of each person present in the execution chamber or observation room during each execution or attempted execution since July 28, 2022, descriptions of the processes that the Defendants use to provide security and confidentiality at all executions, and descriptions of the events in the execution chamber for all executions or attempted executions since July 28, 2022. (*Id.* at 6–8).

Mills contends that absent expedited discovery, his claims "may be mooted before they can be judicially resolved." (Doc. 8 at 1).  He argues that there is good cause for expedited discovery because his execution date is weeks away, there is a pending motion for a preliminary injunction, the discovery he seeks is relatively limited, and it is not unduly burdensome to produce.  Finally, Mills asserts that expedited discovery is warranted in light of the lack of transparency surrounding the execution process in Alabama.  The Defendants argue in turn that Mills engaged in undue delay in bringing his claims and this emergent motion, and thus any need for expedited discovery is self-imposed.  Further, the Defendants contend that Mills' claims are not meritorious, the burden on the Defendants to respond to the requests is high, and the scope of the discovery is overly broad.  For the

reasons stated below, the Court finds that Mills has not shown good cause for expedited discovery at this stage.

Mills points to the time constraints in this case as good cause for expedited discovery.  However, as explained earlier, the time constraints are entirely of Mills' creation.  Moreover, his contention that thirty days is "ample" time for the Court to evaluate and rule on his motion (doc. 7 at 28) is at odds with his position that expedited discovery is now necessary to prevent his claims from being "mooted before they can be judicially resolved" (doc. 8 at 1).  Mills' delay in filing this action and this motion counsels against a finding that any time constraints constitute good cause.  Further, although a pending motion for a preliminary injunction may indicate that "expedited discovery is more likely to be appropriate," this Court has already found that the motion for a preliminary injunction is due to be denied. *See Mullane*, 339 F.R.D. at 663.

Mills also asserts that the burden on the Defendants to comply with these discovery requests is minimal.  The Court disagrees, as a review of his requests reveals that they are quite broad.  For example, he seeks all documents and communications regarding multiple aspects of the execution process for all executions scheduled since July 28, 2022, as well as detailed descriptions of these executions. (*See generally* doc. 8-1, doc. 8-2).  Further, Mills requests that the Defendants produce all of the documents that they intend to rely on in their defense in this case. (Doc. 8-1 at 10, para. 16).  Expedited discovery is intended to allow a party "to obtain specific, limited, and identifiable pieces of information." *Mullane*, 339 F.R.D. at 663 (citation omitted).  Mills' requests go beyond this standard. *See id.* at 664 ("Plaintiff has placed no limitation on the discovery he seeks and has not proposed a

set of narrowly-tailored discovery requests."). Moreover, Mills requests that the Defendants answer his requested discovery by May 17, 2024, a date which has now passed. The burden on the Defendants to respond to these discovery requests is high, especially considering the time constraints created by Mills' unjustified delay in filing. The Court thus finds that the prejudice to the Defendants outweighs Mills' discovery interest and militates strongly against a finding of good cause.

Mills argues that another judge in this district has granted motions for expedited discovery in similar cases, including *Miller v. Hamm et al.*, 2022 WL 12029102 (M.D. Ala. Oct. 20, 2022) and *Smith v. Hamm. et. al.*, 2:23-cv-656 (M.D. Ala. Nov. 24, 2023). Both of those cases involved unique circumstances which are not present in this case at this stage. In *Miller*, the court granted some expedited discovery where the plaintiff—who, at that time, alleged he was the only living execution survivor in the United States—faced an expedited, second execution date. *Miller*, 2022 WL 12029102, at *2. While the defendants argued that expedited discovery was not warranted because the plaintiff's claims were either barred by the statute of limitations or failed on the merits, the court was "not persuaded" that the claims were "so clearly barred by the statute of limitations" or "so implausible" that it counseled against granting expedited discovery given the "virtually unprecedented" circumstances of the case. *Id.* at *2–*3. Here, as described earlier in this Opinion, this Court finds that Mills is not substantially likely to succeed on the merits of his claims and that the circumstances do not warrant expedited discovery. In *Smith*, the court found that the defendants' "plan to use a novel method of execution, the looming execution date, and the pending motion for preliminary injunction, counsel[ed] in favor of

allowing some expedited discovery." (Doc. 28 at 3 in *Smith v. Hamm et al.*, 2:23-cv-656 (M.D. Ala. Nov. 24, 2023)).  Here, the pending motion for preliminary injunction is due to be denied, and the circumstances present are not sufficiently comparable to a novel method of execution to warrant expedited discovery.

Accordingly, the Court finds that Mills has not shown good cause at this stage and that the motion for expedited discovery is due to be denied.

## VI.  CONCLUSION

Because the equities weigh against Mills, and because he has not shown a substantial likelihood of success on the merits, Mills has not established entitlement to the extraordinary remedy of a preliminary injunction or stay of execution.  Moreover, Mills has failed to show good cause at this stage for expedited discovery.

Accordingly, it is

ORDERED that Mills' motion for preliminary injunction (doc. 7) is DENIED.  It is further

ORDERED that Mills' motion for expedited discovery (doc. 8) is DENIED.

DONE this 21st day of May, 2024.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE